UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HARRY COTA; GILDA GARCIA; ALLIE JO WOODARD, by her guardian ad litem Linda Gaspard-Berry; HARRY COTA; SUMI KONRAI by her guardian ad litem Casey Konrai; RONALD BELL by his guardian ad litem Rozene Dilworth, individually and on behalf of all other similarly situated, | Case No:  C 09-3798 SBA **ORDER GRANTING PLAINTIFFS' MOTION TO SUPPLEMENT COMPLAINT** Docket 207 |
| Plaintiffs, | |
| vs. | |
| DAVID MAXWELL-JOLLY, Director of the Department of Health Care Services, State of California, DEPARTMENT OF HEALTH CARE SERVICES, | |
| Defendants. | |

The parties are presently before the Court on Plaintiffs' Motion for Leave to Supplement Complaint.  Dkt. 207.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I.    **BACKGROUND**

A.    **PRIOR PROCEEDINGS**

The parties are familiar with the facts of this case, which are summarized herein only to the extent they are pertinent to the instant motion.  Plaintiffs are elderly and/or disabled persons who receive services through California's Adult Day Health Care ("ADHC") program, which includes therapeutic, social and skilled nursing health activities for the purpose of restoring or

maintaining optimal capacity for self care.  ADHC is provided by the State through its Medi-Cal program, and is administered by the State Department of Health Care Services ("DHCS").  Program services are provided by non-profit and for profit providers which are licensed by the state, and operate centers throughout the state.  Individuals who live at home or in licensed residential care facilities participate from one to five days per week, depending on their assessed needs.  While the majority of persons served are elderly, ADHC centers also serve non-elderly adults with chronic disabling mental health, cognitive or physical conditions.  ADHC is an optional Medi-Cal benefit, meaning that it is provided at the discretion of the State.

In response to the State's budget deficit, the California Legislature enacted Assembly Bill ABx4 5 ("ABx4 5"), which includes cuts to ADHC services.  Among other things, the new law reduces the maximum ADHC benefit from five days to three days per week for all Medi-Cal beneficiaries, and the imposes more stringent eligibility criteria.  In response to ABx4 5, Plaintiffs, acting on behalf of themselves and other elderly persons and adults with physical and mental disabilities who receive services provided under the ADHC benefit, filed the instant lawsuit against the DHCS and its then Director, David Maxwell-Jolly, on August 18, 2009.  Plaintiffs alleged that the reduction of ADHC services under ABx4 5 violates Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act, among other federal requirements.[1]

Since the commencement of this action, the Court has issued two preliminary injunction orders enjoining the reduction of ADHC services under ABx4 5.  On September 10, 2009, the Court granted Plaintiffs' motion for preliminary injunction to prevent Defendants from reducing ADHC services from a maximum of five days to three days per week.  See Brantley v. Maxwell-Jolly, 656 F. Supp. 2d 1161 (N.D. Cal. 2009).   Defendants did not appeal the

---

[1] The original Plaintiffs were Lillie Brantley, Gilda Garcia and Allie Jo Woodward.  On December 18, 2009, Plaintiffs filed a First Amended Complaint ("Complaint") which, inter alia, joined Harry Cota, Ronald Bell and Sumi Konrai as additional Plaintiffs.  After Ms. Brantley passed away, Dkt., 166, Mr. Cota was substituted in her stead as lead plaintiff, Dkt. 170.  Since then, Mr. Cota and Ms. Konrai have passed away.  Dkt. 197, 206.

Court's ruling.  On February 24, 2010, the Court issued a second preliminary injunction, which enjoined Defendants from implementing new medical necessity and eligibility criteria.  See Cota v. Maxwell-Jolly, 688 F. Supp. 2d 980 (N.D. Cal. 2010).  Defendants filed a notice of appeal from the latter ruling on May 23, 2010.  See Ninth Cir. Dkt. No. 10-15635.  The Ninth Circuit subsequently stayed the appeal pending resolution of Oster v. Wagner, Ninth Cir. Dkt. No. 09-17581.  See Dkt. 200 at 1.  In turn, the court of appeal deferred resolution of Oster pending the United States Supreme Court's forthcoming decision in Maxwell-Jolly v. Ind. Living Center of S. Cal., Inc., Supreme Court Dkt. No. 09-958.  See Dkt. 204 at 3.  On November 22, 2010, the Court, upon the joint request of the parties, stayed the instant action pending resolution of the appeal of this Court's February 24, 2010 preliminary injunction order.  Dkt. 201.

## B.   NEW LEGISLATION:  AB 97

On March 24, 2011, California Governor Jerry Brown signed into law Assembly Bill 97 ("AB 97") which will entirely eliminate ADHC as an optional Medi-Cal benefit, provided that the federal government confers its approval to remove such benefit.  Gershon Decl. Ex. C, Dkt. 208-3 at 5.  AB 97 authorizes the State to create a "short-term program" to provide transition services once ADHC is eliminated.  Id. at 6.  The new law provides that, "During the 2011-12 Regular Session of the Legislature, legislation will be adopted to create a new program called the Keeping Adults Free from Institutions (KAFI) program…. As prescribed by subsequent statute, the Department of Health Care Services shall develop a federal waiver to maximize federal reimbursement for the KAFI program to the extent permitted by federal law."  Id.  Funding for KAFI appears to be uncertain, however, because it is dependent upon Senate Bill 69 ("SB 69"), which has not been signed into law by Governor Brown.  Id. ¶ 5, Dkt. 208.  Even if approved, SB 69 cuts the appropriation for ADHC by half.  Id.  Plaintiffs have requested that the DHCS maintain current funding levels and eligibility standards for ADHC programs until the KAFI program is implemented, but have been unable to obtain such assurances from the State.  Id. ¶¶ 7-8 and Ex. F, Dkt. 208-6.

**C.   PENDING MOTION**

As a result of AB 97, Plaintiffs now desire to supplement the Complaint to add allegations based on the new legislation to the existing claims for relief, and to reflect the procedural events that have transpired since the commencement of the action.  See Gershon Decl. Ex. A (copy of the Proposed Second Amended Complaint), Dkt. 208-1.  In addition, Plaintiffs seek to substitute Toby Douglas, the current DHCS Director, in place of Mr. Jolly, and to remove the allegations pertaining to Ms. Brantley, Konrai and Mr. Cota, all of whom are deceased.  Finally, Plaintiffs seek to join four new plaintiffs to replace the deceased plaintiffs and "to ensure that the class of plaintiffs affected by AB 97 will be adequately represented." Pls.' Mot. at 9.  In the event leave is granted, Plaintiffs intend to file a motion for preliminary injunction to prevent implementation of AB 97, which the parties anticipate could take effect as early as August 1, 2011.  Id. at 4.

The Court approved the parties' stipulation to partially lift the stay in order to allow Plaintiffs to file a motion for leave to supplement their Complaint.  Dkt. 207, 211.  In their opposition brief, Dkt. 212, Defendants oppose Plaintiffs' motion for leave to supplement their Complaint on the grounds that:  (1) the Court lacks jurisdiction to consider the motion due to the pendency of the appeal from the Court's second preliminary injunction order; (2) the new allegations relating to AB 97 must be brought in a new action; and (3) the new claims are futile.  Plaintiffs have filed a reply and the matter is now fully briefed.

**II.   LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 15(d), the court may permit a party to supplement his or her complaint in order to set out "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d). "Rule 15(d) permits the filing of a supplemental pleading which introduces a cause of action not alleged in the original complaint and not in existence when the original complaint was filed."  Cabrera v. City of Huntington Park, 159 F.3d 374, 382 (9th Cir. 1998) (internal quotations omitted).  "The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of

claims which arise after the initial pleadings are filed." <u>William Inglis & Sons Baking Co.</u> <u>v. ITT Cont'l Baking Co.</u>, 668 F.2d 1014, 1057 (9th Cir. 1982). "While leave to permit supplemental pleading is favored, it cannot be used to introduce a separate, distinct and new cause of action." <u>Planned Parenthood of Southern Arizona v. Neely</u>, 130 F.3d 400, 402 (9th Cir. 1997) (per curiam) (internal citations and quotation marks omitted).  The district court has "broad discretion" in ruling on a Rule 15(d) motion.  <u>See</u> <u>Keith v. Volpe</u>, 858 F.2d 467, 473 (9th Cir. 1988).

## III.   **DISCUSSION**

###   A.   JURISDICTION

Defendants contend, as a threshold matter, that the Court lacks jurisdiction to consider Plaintiffs' motion due to the pendency of the Ninth Circuit appeal.  Defs.' Opp'n at 6.  It is well settled that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." <u>Griggs v. Provident</u> <u>Consumer Discount Co.</u>, 459 U.S. 56, 58 (1982).  The purpose of this rule is "to avoid confusion or waste of time resulting from having the same issues before the two courts at the same time." <u>United States v. Powell</u>, 24 F.3d 28, 31 (9th Cir. 1994) (internal quotations omitted).  At the same time, however, "[t]his rule does not apply if the district court has a continuing duty to maintain the status quo pending appeal and if new facts and circumstances arise which require further action to supervise the case and to maintain the status quo." <u>Thomas, Head and Greisen Employees Trust v. Buster</u>, 95 F.3d 1449, 1460 n.19 (9th Cir. 1996); <u>Stein v. Wood</u>, 127 F.3d 1187, 1189 (9th Cir. 1997) ("A district court may retain jurisdiction when it has a duty to supervise the status quo during the pendency of an appeal").

Here, the Court has twice issued preliminary injunctions to maintain the status quo by preventing the State from reducing or eliminating benefits provided by the ADHC program.  Each time, the Court concluded that "the reduction or elimination of public medical benefits is sufficient to establish irreparable harm to those likely to be affected by

the program cuts." Cota, 688 F. Supp.2d at 997 (citing Brantley, 656 F. Supp.2d at 1176). The implementation of AB 97 and its complete elimination of the ADHC program again threatens to alter the status quo. It is for that reason that Plaintiffs seek to supplement their Complaint and file a third motion for preliminary injunction. Thus, pursuant to the Ninth Circuit authority cited above, the Court retains jurisdiction to consider Plaintiffs' motion to supplement the Complaint. To conclude otherwise would allow the State to circumvent the Court's injunctions by filing a notice of appeal, and then enacting new legislation that completely eliminates the very services that the Court has previously concluded would result in irreparable harm. Such a result is legally and logically untenable.

### B.   SEPARATE LAWSUIT

As an alternative matter, Defendants contend that Plaintiffs' proposed supplementation presents "new and distinct" claims that must be presented in a separately-filed lawsuit. Defs.' Opp'n at 9. A supplemental claim is not new and distinct if it has "some relationship" to the claims originally alleged. Keith, 858 F.2d at 474. In Keith, the plaintiffs filed suit against various federal and state agencies, seeking injunctive relief to halt construction of a freeway until the agencies guaranteed their compliance with state and federal laws designed to protect the environment, assured the availability of replacement housing for displaced residents, and eliminated discrimination against minority and poor persons seeking replacement housing. 858 F.2d at 470. The parties eventually entered into a consent decree, which included specific commitments to provide units of replacement housing for low and moderate income households. Id. The district court approved the consent decree and retained jurisdiction to ensure that the terms of the agreement were fulfilled. Id.

Four years after entry of the consent decree, some of the original plaintiffs and other individuals sought to file a supplemental complaint against the City of Hawthorne (which was a plaintiff at the time the consent decree was entered) based on its refusal to approve certain housing developments. Id. The district court granted plaintiffs leave to supplement the complaint and enjoined Hawthorne from prohibiting the construction of the housing

1   units.  Id.  Hawthorne appealed, claiming that the district court abused its discretion in

2   allowing the supplemental complaint because it involved additional statutes, and therefore,

3   presented "new and distinct" claims.  Id. at 474.  In rejecting this contention, the Ninth

4   Circuit recognized that there need only be "*some relationship* … between the newly alleged

5   matters and the subject of the original action" and that "they need not all arise out of the

6   same transaction."  Id.  (emphasis added).  Because the consent decree and the

7   supplemental complaint addressed the same issue, i.e., "the availability of replacement

8   housing for persons displaced by the Century Freeway," the court concluded that the new

9   claims against Hawthorne could be brought in the original action.  Id.

10          As in Keith, the claims at issue in the current Complaint and those which Plaintiffs

11  seek to add by way of a supplemental complaint arise from the same concern; to wit, the

12  State's proposed reduction and/or elimination of ADHC services.  As noted, Plaintiffs

13  commenced the instant lawsuit to address the State's attempt under ABx4 5 to cut ADHC

14  services due to budgetary constraints.  AB 97 is simply a continuation of that process,

15  except that the State now is planning on completely eliminating the ADHC program.  The

16  Court has already considered the State's attempts to restrict the ADHC program twice

17  before, in the context of ruling on the preliminary injunction motions concerning ABx4 5.

18  The supplemental allegations concern the same program, the same State agency, same legal

19  claims and substantially the same plaintiff class, all of whom will be affected by AB 97, as

20  the legislation will eliminate ADHC as an optional Medi-Cal benefit in its entirety.  Given

21  the relationship between the supplemental and original claims, permitting Plaintiffs to

22  supplement their Complaint, as opposed to commencing an entirely new action, would

23  promote judicial efficiency.  See San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of

24  the Interior, 236 F.R.D. 491, 499 (E.D. Cal. 2006) ("[t]he district Court has developed

25  extensive knowledge of the relevant law, background, and scientific considerations . . .

26  Retaining the new claims as part of the existing case serves the interests of judicial

27  economy").

28

Defendants take issue with Plaintiffs' contention that the proposed supplemental allegations concern the same program at issue in the Complaint.  In particular, they point out that the proposed new claims are predicated on new legislation—AB 97—and posit that Plaintiffs seek to challenge "the adequacy of forthcoming and yet-to-be developed and funded KALI programs."  Defs.' Opp'n at 10.  These assertions are unavailing.  As an initial matter, Defendants do not dispute that the new claims bear at least "some relationship" to Plaintiffs' pending claims.  Nor could they do so legitimately, as Plaintiffs' existing and supplemental claims both are directed at the State's efforts to curtail—and now eliminate—ADHC services.  Under Keith, the existence of such a relationship is sufficient to permit Plaintiffs to bring those claims in the pending action.  In addition, Defendants are incorrect in claiming that Plaintiffs merely are challenging the sufficiency of the KALI program.  To the contrary, Plaintiffs' concern is that the State intends to eliminate ADHC services *without having any transition services in place*.

Nor is the Court persuaded by Defendants' reliance on Neely.  In that case, the plaintiffs sued the State of Arizona to enjoin enforcement of the state's parental consent abortion statute.  130 F.3d at 401-402.  The district court later entered a final order declaring the statute unconstitutional and issued a permanent injunction, which the state defendants did not appeal.  Id.  Several years later, the Arizona legislature amended and reenacted the parental consent abortion statute, prompting plaintiffs to seek leave to supplement their complaint to challenge the new legislation prior to its effective date.  Id. The district court granted plaintiffs' motion, found the revised statute unconstitutional and permanently enjoined defendants from enforcing the statute.  Id.

On appeal, the appellate panel in Neely reversed, and held that the supplemental complaint filed by plaintiffs involved a new and distinct action that should have been the subject of a separate suit.  Id. at 402.  In reaching its decision, the court noted that plaintiffs were seeking to challenge a different statute than the one originally at issue, and that the original suit had already terminated in a final judgment rendered four years earlier.  Id. Since the earlier judgment was final and not appealed, it could not be affected by the

1   plaintiffs' supplemental complaint.  <u>Id.</u>  In addition, the court highlighted the fact that since

2   the earlier action had been finally concluded, the efficiency that would otherwise be

3   realized by resolving the original and supplemental claims together would not exist.  <u>Id.</u>

4         The factual and procedural posture of the instant action is distinguishable from

5   <u>Neely</u>.  Here, the original dispute has not been resolved and remains ongoing.  While

6   Defendants are correct that ABx4 5 is different from SB 97, there is no legitimate dispute

7   that both pieces of legislation arise from the State's ongoing efforts to reduce its budget

8   deficit by curtailing—and now, eliminating—ADHC services without any transition

9   services in place.  Given the current status of this case, it remains possible to resolve all of

10   Plaintiffs' claims with regard to changes in the ADHC program in a single action.  Unlike

11   the situation presented in <u>Neely</u>, compelling Plaintiffs to present their new SB 97-related

12   claims in a new action would waste, rather than conserve, judicial resources.

13      **C.**    **FUTILITY**

14         As an alternative matter, Defendants contend that leave to supplement the Complaint

15   should be denied on futility grounds based on the theory that (1) Plaintiffs' proposed claims

16   are unripe, and (2) Plaintiffs lack standing.  Defs.' Opp'n at 15-19.  "The Article III case or

17   controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter

18   alia, that plaintiffs have standing and that claims be 'ripe' for adjudication."  <u>Chandler v.</u>

19   <u>State Farm Mut. Auto. Ins. Co.</u>, 598 F.3d 1115, 1121-22 (9th Cir. 2010) (citing <u>Allen v.</u>

20   <u>Wright</u>, 468 U.S. 737, 750 (1984)).  "[R]ipeness is a means by which federal courts may

21   dispose of matters that are premature for review because the plaintiff's purported injury is

22   too speculative and may never occur," while "standing addresses whether the plaintiff is the

23   proper party to bring the matter to the court for adjudication[.]"  <u>Id.</u>

24      **1.**    **Ripeness**

25         "The central concern of the ripeness inquiry is whether the case involves uncertain

26   or contingent future events that may not occur as anticipated, or indeed may not occur at

27   all."  <u>Chandler</u>, 598 F.3d at 1122 (internal quotations and brackets omitted).  Defendants

28   argue that Plaintiffs' new claims "would be subject to dismissal as unripe as the transition

and KAFI programs plaintiffs seek to enjoin have not yet even been developed or detailed." Def. Opp'n at 15.  The flaw in this argument is that it misconstrues Plaintiffs' claims. Plaintiffs are not seeking to challenge the adequacy of the yet-to-be-implemented KAFI programs.  Rather, Plaintiffs' claims stem from the State's stated intention of terminating all ADHC services *without* developing, implementing or funding adequate short and long term replacement services to prevent institutionalization once ADHC is eliminated. Though Plaintiffs have sought assurances from the State regarding the existence of a transition plan, the State has yet to provide any meaningful response to their concerns.  See Gershon Decl. Ex. F; Kuwayti Decl. ¶ 3, Dkt. 215.

Next, Defendants argue that Plaintiffs should wait until federal approval for terminating ADHC benefits is received, funding for KAFI under SB 69 is signed into law by the Governor, administrative plans for the transition program are issued, and the legislation authorizing the KAFI program is adopted and the actual deadline for notice of discontinuation of the ADHC benefit has passed before they seek relief from the Court. Defs.' Opp'n at 16-17.  However, Defendants concede that it is "unlikely" that the CMS will decline the State's request to terminate the ADHC benefit.  Defs.' Opp'n at 9.  Thus, the virtual certainty that Defendants will eliminate all ADHC services, coupled with their admission there are no concrete transition plans in place once the termination take effect, actually underscores the ripeness of Plaintiffs' proposed claims.

Moreover, the Court has previously rejected a similar argument made by Defendants earlier in this action.  In ruling on the first injunction in this case, the Court noted that it was "persuaded by Plaintiffs' concern that Defendants have failed to implement any means of ensuring that, if and when the cuts take effect, the necessary alternative services will be identified and in place for Plaintiffs so that there will not be a period where they are not receiving the care prescribed by their [Individual Plans of Care ("IPCs")]."  Brantley, 656 F. Supp. 2d at 1174.  The Court echoed this reasoning in its second preliminary injunction, finding that "Plaintiffs need not wait until the harm is actually suffered before seeking

1   injunctive relief." <u>Cota</u>, 688 F. Supp. 2d at 998.  Those concerns apply equally here with

2   respect to the passage of AB 97.

3   **2.    Standing**

4           To establish standing, there must be the "irreducible constitutional minimum" of an

5   injury-in-fact.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  An injury-in-fact

6   is "an invasion of a legally protected interest which is (a) concrete and particularized . . .

7   and (b) actual or imminent, not conjectural or hypothetical."  <u>Id.</u> (internal citations and

8   quotation marks omitted).  Defendants argue that Plaintiffs lack standing "[f]or the same

9   reasons plaintiffs' new allegations are unripe for review…."  Defs.' Opp'n at 18.  This

10  argument therefore fails for the same reasons articulated above.  In addition, Defendants'

11  argument rests upon the misperception that Plaintiffs are seeking to challenge the adequacy

12  of the KAFI program, when, in actuality, they are focused on the lack of any definite

13  transition plan for ADHC recipients once the ADHC benefit is terminated.

14  **IV.   <u>CONCLUSION</u>**

15          For the reasons stated above,

16          IT IS HEREBY ORDERED THAT Plaintiffs' Motion for Leave to Supplement

17  Complaint is GRANTED. Plaintiffs shall file their supplemental pleading within two (2)

18  days of the date this Order is filed.  This Order terminates Docket 214.

19          IT IS SO ORDERED.

20  Dated: June 2, 2011

21                                                SAUNDRA BROWN ARMSTRONG
                                                  United States District Judge

22

23

24

25

26

27

28