1  Elissa Gershon, State Bar No. 169741
   elissa.gershon@disabilityrightsca.org
2  Elizabeth Zirker, State Bar No. 233487
   elizabeth.zirker@disabilityrightsca.org
3  Kim Swain, State Bar No. 100340
   kim.swain@disabilityrightsca.org
4  DISABILITY RIGHTS CALIFORNIA
   1330 Broadway, Suite 500
5  Oakland, CA 94612
6  Telephone: 510.267.1200
   Facsimile: 510.267.1201
7

8           **IN THE UNITED STATES DISTRICT COURT**
          **FOR THENORTHERN DISTRICT OF CALIFORNIA**

9  ESTHER DARLING; RONALD BELL by his        ) **Case No.: C-09-03798 SBA**
   guardian ad litem Rozene Dilworth; GILDA  )
10 GARCIA; WENDY HELFRICH by her guardian    ) **CLASS ACTION**
   ad litem Dennis Arnett; JESSIE JONES; RAIF)
11 NASYROV by his guardian ad litem Sofiya    ) **[PROPOSED] ORDER GRANTING**
   Nasyrova; ALLIE JO WOODARD, by her         ) **PRELIMINARY APPROVAL OF**
12 guardian ad litem Linda Gaspard-Berry;     ) **SETTLEMENT AGREEMENT,**
   individually and on behalf of all others similarly ) **DIRECTING NOTICE TO THE CLASS,**
13 situated,                                  ) **SETTING A SCHEDULING ORDER**
                                              ) **AND FAIRNESS HEARING**
14          Plaintiffs,                       )
                                              )
15   v.                                       ) **Hearing Date:**
                                              ) **Time:**
16 TOBY DOUGLAS, Director of the Department of) **Judge:**    Hon. Saundra Armstrong
   Health Care Services, State of California, ) **Address:**  1301 Clay Street
17 DEPARTMENT OF HEALTH CARE                  )             Oakland, CA 94102
   SERVICES,                                  ) **Courtroom:** 1, 4th Floor
18                                            )
            Defendants.                       )
19                                            )
                                              )
20

21

22

23

24

25

26

27

28
                                    i

Kenneth A. Kuwayti, State Bar No. 145384
Kkuwayti@mofo.com
Benjamin A. Petersen, State Bar No. 267120
Bpetersen@mofo.com
Morrison & Foerster LLP
755 Page Mill Road
Palo Alto, California  94304-1018
Telephone:    650.813.5600
Facsimile:     650.494.0792

Anna Rich, State Bar No. 230195
arich@nsclc.org
Kevin Prindiville, State Bar No. 235835
kprindiville@nsclc.org
NATIONAL SENIOR CITIZENS LAW
CENTER
1330 Broadway, Suite 525
Oakland, California  94612
Telephone:    510.663.1055
Facsimile:     510.663.1051

Eric Carlson, State Bar No. 141538
Ecarlson@nsclc.org
NATIONAL SENIOR CITIZENS LAW CENTER
3435 Wilshire Boulevard, Suite 2860
Los Angeles, CA  90010
Telephone:    213.674.2813
Facsimile:     213.639.0934

Barbara Jones, State Bar No. 88448
bjones@aarp.org
AARP FOUNDATION LITIGATION
200 So. Los Robles, Suite 400
Pasadena, California  91101
Telephone:    626.585.2628
Facsimile:     626.583.8538

Kenneth W. Zeller, *Pro Hac Vice*
kzeller@aarp.org
Kelly Bagby, *Pro Hac Vice*
kbagby@aarp.org
AARP FOUNDATION LITIGATION
601 E Street N.W.
Washington, D.C.  20049
Telephone:    202.434.2060
Facsimile:     202.434.6424

Sarah Somers, State Bar No. 170118
somers@healthlaw.org
Martha Jane Perkins, State Bar No. 104784
perkins@healthlaw.org
NATIONAL HEALTH LAW PROGRAM
101 East Weaver Street, Suite G-7
Carrboro, North Carolina  27510
Telephone:    919.968.6308
Facsimile:     919.968.8855

**Attorneys for Defendants**

KAMALA D. HARRIS
Attorney General of California
Kamala.Harris@doj.ca.gov
SUSAN M. CARSON (CA SBN 135875)
Supervising Deputy Attorney General
Susan.Carson@doj.ca.gov
455 Golden Gate Avenue, Suite 1100
San Francisco, California 94102-7004
Telephone: 415.703.5615
Facsimile: 415.703.5480

*Darling, et al. v. Douglas, et al.*, C09-03798 SBA; [PROPOSED] ORDER GRANTING PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENT, DIRECTING NOTICE TO THE CLASS, SETTING A SCHEDULING
ORDER AND FAIRNESS HEARING

Plaintiffs Esther Darling, Ronald Bell by his *Guardian ad Litem*, Rozene Dilworth, Gilda Garcia, Wendy Helfrich by her *Guardian ad Litem*, Dennis Arnett, Jessie Jones, Raif Nasyrov by his *Guardian ad Litem*, Sofiya Nasyrova, and Allie Jo Woodard by her *Guardian ad Litem*, Linda Gaspard-Berry, ("Plaintiffs"), and Defendants Toby Douglas and the Department of Health Care Services (DHCS), ("Defendants") have filed a Joint Request for Preliminary Approval of Settlement Agreement, Directing Notice to the Class, Setting a Scheduling Order and Fairness Hearing.

The Court, having considered the joint moving papers of the Parties and the Settlement Agreement and proposed notice to the class submitted therewith, for good cause appearing,[1]

IT IS HEREBY ORDERED THAT:

1.       The parties' joint motion for preliminary approval (Dkt. 414) is GRANTED.  The proposed settlement set forth in the Settlement Agreement attached as Exhibit 1 to the declaration of Elissa Gershon and attached hereto, and the proposed modification of the class definition set forth therein, are preliminarily approved as being within the range of reasonableness such that notice should be given to the Settlement Class.

2.       For settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2), the Court conditionally certifies the following Settlement Class:  "All Medi-Cal beneficiaries in the State of California for whom Adult Day Health Care benefits will be eliminated under the provisions of AB 97 including those who met or will meet the current eligibility and medical necessity criteria for ADHC at any point prior to the Effective Date of this Settlement; or who will meet the eligibility and medical necessity criteria for CBAS at any point prior to Termination of this Agreement."

3.       For settlement purposes only, the Court appoints Wendy Helfrich, Jessie Jones, Raif Nasyrov, Esther Darling, Ronald Bell, Gilda Garcia, and Allie Jo Woodard are Class Representatives for the Settlement Class.

---

[1] The Court, in its discretion, finds this matter suitable for resolution without a hearing. <u>See</u> Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

1

4.      For settlement purposes only, the Court appoints Disability Rights California, National Health Law Program, National Senior Citizens Law Center, AARP Foundation Litigation, and Morrison & Foerster LLP as Class Counsel for the Settlement Class.

5.      The contents of the class notice, attached as Exhibit 2 to the declaration of Elissa Gershon (as subsequently modified) and attached hereto, is adequate under Rule 23 of the Federal Rules of Civil Procedure and approved as to form.  The parties shall provide class members with notice in the form and in the manner specified in the Settlement Agreement and Joint Motion.

6.      The parties shall adhere to the following general time schedule:

a.      Notice to the class shall be mailed, posted and/or published in the manner specified in the Settlement Agreement and Joint Motion by December 14, 2011 or as soon as reasonably practicable thereafter;

b.      Each class member shall have until January 10, 2012, in order to file an objection and/or provide notice of intent to appear, as the case may be, under the procedures specified in the Settlement Agreement, Joint Motion, and Notice to Class.  Such date shall be determined by the postmark of the document filed;

7.      The Court finds that the forms of notice to Plaintiff Settlement Class Members regarding the pendency of the litigation and of this settlement, including the methods of dissemination to the proposed Plaintiff Settlement Class Members in accordance with the terms of this order, constitute the best notice practicable under the circumstances.

8.      Plaintiffs shall file a Notice of Motion and Motion, and Points and Authorities in Support of the Parties' Agreement re Attorneys' Fees and Costs ("Fee Motion") no later than December 14, 2011.  Defendants shall file a Notice of Non-Opposition to Plaintiffs' Fee Motion no later than December 28, 2011.

9.      The Parties shall file a Joint Motion for Final Approval of the Settlement, including Certification of the Settlement Class no later than January 17, 2012. The filing shall include all papers in support of the Joint Motion for Final Approval of the Settlement and/or response(s) to any

2

1    valid and timely objection with the Court.  The Parties shall serve copies of such papers upon any

2    objector who has complied with the provisions of Paragraph 6.b. of this Order.

3            10.     The Court shall conduct a Fairness Hearing regarding final approval of the Settlement

4    Agreement and Plaintiffs' Fee Motion on <u>January 24, 2012 at 1:00 p.m.</u> to hear any objections to the

5    Settlement, and to consider and determine whether the proposed settlement of the litigation on the

6    terms set forth in the Settlement Agreement should be approved as fair, just, reasonable, adequate

7    and in the best interests of the Plaintiff Settlement Class; whether Plaintiffs' Counsels' attorneys'

8    fees and reimbursement of expenses should be approved; and whether the Order approving the

9    settlement should be entered.

10          IT IS SO ORDERED.

11

12   Dated:  12-13-11

                               *Saundra B Armstrong*

13                         Honorable Saundra Brown Armstrong
                      United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

                                     3

28

# *Darling v. Douglas* C09-03798 SBA

## EXHIBIT 1

## SETTLEMENT AGREEMENT

to [Proposed] Order Granting Preliminary Approval of
Settlement Agreement, Directing Notice to the Class,
Setting a Scheduling Order and Fairness Hearing

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ESTHER DARLING; RONALD BELL by his guardian ad litem Rozene Dilworth; GILDA GARCIA; WENDY HELFRICH by her guardian ad litem Dennis Arnett; JESSIE JONES; RAIF NASYROV by his guardian ad litem Sofiya Nasyrova; ALLIE JO WOODARD, by her guardian ad litem Linda Gaspard-Berry; individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>TOBY DOUGLAS, Director of the Department of Health Care Services, State of California, DEPARTMENT OF HEALTH CARE SERVICES,<br><br>     Defendants. | Case No.: **C-09-03798 SBA**<br><br>**SETTLEMENT AGREEMENT**<br><br>**CLASS ACTION** |

INDEX

I. INTRODUCTION ................................................................................ 1

II. PARTIES ......................................................................................... 1

III. JURISDICTION .............................................................................. 2

IV. RECITALS ...................................................................................... 2

V. PROCEDURAL HISTORY .............................................................. 2

VI. DEFINITIONS ................................................................................ 4

VII. CLASS DEFINITION AND CERTIFICATION .............................. 10

VIII. PROVISIONS FOR NAMED PLAINTIFFS ................................ 10

IX. AMENDMENT TO THE 1115 WAIVER TO PROVIDE CBAS SERVICES ......... 10

X. ELIGIBILITY FOR CBAS SERVICES ........................................... 11

XI. ASSESSMENT FOR CBAS SERVICES ......................................... 13

XII. PROVISION OF CBAS SERVICES .............................................. 23

XIII. ENHANCED CASE MANAGEMENT SERVICES FOR CLASS MEMBERS NOT ENROLLED IN CBAS ................................................ 31

XIV. DUE PROCESS/APPEALS .......................................................... 32

XV. NOTICE PLAN ............................................................................. 34

XVI. DATA COLLECTION, REPORTING, AND QUALITY ASSURANCE ........ 36

XVII. FORM OF THE JUDGMENT ...................................................... 38

XVIII. SCOPE OF THE AGREEMENT ................................................ 38

XIX. JUDICIAL APPROVAL OF THE SETTLEMENT ......................... 39

XX. ATTORNEYS' FEES AND COSTS AND MONITORING ................ 40

XXI. DISPUTE RESOLUTION PROCESS ........................................... 40

XXII. DURATION OF THE TIME PERIOD TO SATISFY THE TERMS OF THE AGREEMENT AND JUDGMENT ............................ 41

XXIII. NO ADMISSION OF LIABILITY ............................................. 41

XXIV. ADDITIONAL PROVISIONS .................................................... 42

**XXV.  NOTICE TO CLASS COUNSEL** ........................................................................ **43**

**XXVI. SIGNATURES** ..................................................................................................... **43**

## I.    INTRODUCTION

Plaintiffs, who are elderly persons and adults with disabilities, brought this class action suit against the California Department of Health Care Services and its Director (Defendants) to enjoin changes being made to Adult Day Health Care (ADHC) asserting that the changes to the program, as enacted by the California Legislature, would place them at risk of unnecessary institutionalization. Plaintiffs also alleged that Plaintiffs' due process rights were violated and that restrictive new eligibility criteria violated Medicaid requirements. *Esther Darling, et al. v. Toby Douglas, et al.*, Case No. C-09-03798 SBA. Plaintiffs filed their initial complaint on August 18, 2009, first amended complaint on December 18, 2009, and second amended complaint on June 2, 2011. This action sought declaratory and injunctive relief for violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution; Title XIX of the Social Security Act, (the Medicaid Act), (42 U.S.C. §§ 1396a-1396w-5); Title II of the Americans with Disabilities Act of 1990 (ADA), (42 U.S.C. § 12132); Section 504 of the Rehabilitation Act of 1973 (Section 504), (29 U.S.C. § 794); and California Government Code Section 11139.

## II.    PARTIES

Named Plaintiffs are Esther Darling; Ronald Bell by his Guardian ad Litem, Rozene Dilworth; Gilda Garcia; Wendy Helfrich by her Guardian ad Litem, Dennis Arnett; Jessie Jones; Raif Nasyrov by his Guardian ad Litem, Sofiya Nasyrova; and Allie Jo Woodard by her Guardian ad Litem, Linda Gaspard-Berry. The case previously included Plaintiffs Lillie Brantley, Harry Cota, and Sumi Konrai, all of whom are now deceased.

Defendant California Department of Health Care Services (DHCS) is the state agency responsible for administering the federal Medicaid program, entitled "Medi-Cal" in California. Defendant DHCS was sued only under the Second Claim for Relief (Section 504 of the Rehabilitation Act) and the Seventh Claim for Relief (Cal. Gov't. Code § 11135).

Defendant Toby Douglas is the Director of the California Department of Health Care Services, is California's single state agency for Medicaid and as such receives federal funds.

1

Defendant Douglas is a public agency director responsible for operation of a public entity, pursuant to 42 U.S.C. §§ 12131(1)(A) and (B). Defendant Douglas was sued solely in his official capacity.

Defendant David Maxwell-Jolly was the former Director of the California Department of Health Care Services who was succeeded by Defendant Toby Douglas, the current Director.

## III.    JURISDICTION

The United States District Court has jurisdiction over the claims against all defendants pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1392(b).

## IV.    RECITALS

WHEREAS, the Parties enter into this Settlement Agreement ("Agreement") in mutual recognition and support of Class Members' rights to live in the most integrated setting appropriate and be free of unnecessary institutionalization;

WHEREAS, it is the Parties' intent to provide a seamless transition to Settlement Class Members from current ADHC services to other services for eligible individuals, including the new Community Based Adult Services (CBAS) program, and to provide case management and other services based on assessed need;

WHEREAS, the Parties intend that the provision of ADHC services will terminate as an optional Medicaid benefit, and that a new service, CBAS, will be included under California's 1115 Waiver in order to carry out the terms of this Agreement;

WHEREAS, Defendants deny all liability for the causes of action asserted against them;

WHEREAS, the Parties enter into this Settlement Agreement in order to settle all claims now pending before the District Court and the Ninth Circuit Court of Appeals and to avoid additional expense, uncertainty, and diversion of resources caused by protracted litigation;

THEREFORE, the Parties agree as set forth below.

## V.    PROCEDURAL HISTORY

Plaintiffs initially filed their complaint for declaratory and injunctive relief against the

California Department of Health Care Services and its Director on August 18, 2009. Pursuant to Assembly Bill 5, 4th Ex. Session (Cal. 2009) (Chapter 5, Statutes of 2009) ("ABx4 5"), the Legislature enacted a temporary reduction to ADHC services from a maximum of five to no more than three days per week for all Medi-Cal funded program participants until new medical necessity and eligibility criteria could be developed. Plaintiffs sought and obtained a preliminary injunction, issued on September 10, 2009, which enjoined Defendants from implementing this temporary reduction in services. *Brantley v. Maxwell Jolly*, 656 F. Supp. 2d 1161 (N.D. Cal. 2009). Defendants did not appeal this preliminary injunction. On December 18, 2009, Plaintiffs filed their first amended complaint. ABx4 5 mandated Defendants to implement new medical necessity and eligibility criteria for receipt of ADHC services. The District Court preliminarily enjoined implementation of these eligibility criteria in an Order issued February 24, 2010. *Cota v. Maxwell-Jolly*, 688 F. Supp. 2d 980, 994 (N.D. Cal. 2010). On March 23, 2010, Defendants appealed this preliminary injunction in the Ninth Circuit Court of Appeal. That appeal is still pending. (Case No. 10-15635).

Defendants filed their Answer to Plaintiffs' first amended complaint on March 5, 2010. The Court issued its Order granting class certification on August 10, 2010. On November 8, 2010, parties filed a Stipulation to stay proceedings pending the appeal in the Ninth Circuit.

On March 24, 2011, the Governor signed Assembly Bill 97 (Statutes of 2011) ("AB 97"), which eliminates ADHC as a Medi-Cal optional benefit. The Parties stipulated to partially lift the stay on April 25, 2011. Plaintiffs filed a contested motion for leave to supplement the First Amended Complaint, which was granted. On June 2, 2011, Plaintiffs filed their Second Amended Complaint. On June 8, 2010, Defendants filed a motion to stay the case pending their appeal of the Court's Order granting Plaintiffs leave to file their Second Amended Complaint, which is currently pending.

On May 12, 2011, Defendants submitted a State Plan Amendment (SPA) to the Center for Medicare and Medicaid Services (CMS), and received federal approval on July 1, 2011 to eliminate ADHC as a Medi-Cal optional benefit as of September 1, 2011. Plaintiffs filed their

3

third motion for preliminary injunction on June 9, 2011 seeking to preliminarily enjoin implementation of AB 97. Defendants filed a writ of mandamus in the Ninth Circuit challenging the District Court's granting of leave to amend the First Amended Complaint on June 27, 2011, which is currently pending. (Case No. 11-71801).

Plaintiffs' third motion for preliminary injunction was initially set for hearing on July 26, 2011.

The U.S. Department of Justice filed a Statement of Interest regarding Plaintiffs' third motion for preliminary injunction on July 12, 2011.

On July 21, 2011, Defendants submitted an amended SPA to postpone the elimination date to December 1, 2011. On July 22, 2011, Defendants requested and were granted a continuance of the third preliminary injunction hearing until November 1, 2011. The Court subsequently continued the hearing to November 8, 2011 and then again to November 17, 2011.

## VI.    DEFINITIONS

The following definitions apply to this Settlement Agreement.

1.      1115 Waiver

The "1115 Waiver" refers to Section 1115 of the Social Security Act, 42 U.S.C. § 1315, which provides the Secretary of Health and Human Services broad authority to authorize experimental, pilot, or demonstration projects likely to assist in promoting the objectives of the Medicaid statute. There are two types of Medicaid authority that may be requested under Section 1115:

Section 1115(a)(1) – allows the Secretary to waive provisions of section 1902 to operate demonstration programs, and

Section 1115(a)(2) – allows the Secretary to provide Federal financial participation for costs that otherwise cannot be matched under section 1903.

The 1115 Waiver referred to herein in is the California Bridge to Reform Demonstration Waiver, a Section 1115(a)(1) Waiver.

4

2.  Adult Day Health Care

"Adult Day Health Care" or ADHC means an organized day program of therapeutic, social and health activities and services provided to persons 55 years or older or other adults with functional impairments, either physical or mental, for the purpose of restoring or maintaining optimal capacity for self-care as set forth in title 22, section 78007 of the California Code of Regulations.

3.  Adult Day Health Care Center

"Adult Day Health Center" means a licensed facility which provides adult day health care, or a distinct portion of a licensed health facility in which such care is provided in a specialized unit, under a special permit issued by the Department pursuant to title 22, section 54105 of the California Code of Regulations.

4.  Categorically Eligible for CBAS

Class Members who are categorically eligible for CBAS are current ADHC recipients who are:  Regional Center clients; Multi-Purpose Senior Services Program (MSSP) clients; eligible for Specialty Mental Health services; and/or eligible to receive 195 or more hours of In-Home Supportive Services (IHSS) per month.  These individuals will be ascertained through a data run by DHCS or other departments.  They will be eligible to receive CBAS services at the level that they currently receive ADHC services at least until their reassessment after transition to managed care, as set forth in Section XI.C. of this Agreement.

5.  CBAS

"CBAS" means "Community Based Adult Services" and refers to an outpatient, facility based service program that delivers skilled nursing care, social services, therapies, personal care, family/caregiver training and support, meals and transportation to eligible Medi-Cal beneficiaries.

6.  Chronic Mental Illness

A person with "chronic mental illness" shall have one or more of the following

5

diagnoses in the *Diagnostic and Statistical Manual of Mental Disorders*, DSM IV
TR, Fourth Edition, Text Revision (2000), published by the American Psychiatric
Association: (a) Pervasive Developmental Disorders (except as covered through
Regional Centers); (b) Attention Deficit and Disruptive Behavior Disorders;
(c) Feeding & Eating Disorder of Infancy or Early Childhood; (d) Elimination
Disorders; (e) Other Disorders of Infancy, Childhood, or Adolescence;
(f) Schizophrenia & Other Psychotic Disorders; (g) Mood Disorders; (h) Anxiety
Disorders; (i) Somatoform Disorders; (j) Factitious Disorders; (k) Dissociative
Disorders; (l) Paraphilias; (m) Gender Identity Disorders; (n) Eating Disorders;
(o) Impulse-Control Disorders Not Elsewhere Classified; (p) Adjustment
Disorders; (q) Personality Disorders; or (r) Medication-Induced Movement
Disorders.

If the DSM IV is updated during the term of this Agreement, similar and related
disorders defined in any subsequent versions of the DSM should be used in lieu
of any disorders no longer used.

7.    Class Members

"Class Members" are defined as members of the Settlement Class as described in
Section VII.

8.    Defendants

"Defendants" means the Department of Health Care Services and its Director,
Toby Douglas in his official capacity.

9.    Department or DHCS

"Department" or "DHCS" shall mean the Department of Health Care Services
and/or its contractor, unless otherwise specified.

10.   Developmental Disability

A person with a "developmental disability" shall have a disability meeting the
definitions and requirements set forth in title 17, section 54001(a) of the

6

California Code of Regulations, as determined by a Regional Center under contract with the Department of Developmental Services.

11.     Effective Date of Settlement

"Effective Date of Settlement" means 31 days from entry of Stipulated Judgment following approval of the Settlement Agreement pursuant to Federal Rule of Civil Procedure, Rule 23(e), unless any post-judgment Motions are filed by third parties that extend the deadline for appealing the judgment, in which case the effective date shall be adjusted accordingly by further stipulation of the Parties.

12.     Enhanced Case Management Services

"Enhanced Case Management Services" refers to a service made available, either through Medi-Cal managed care (in COHS, Two-Plan, and GMC counties) or on a fee-for-service basis, to Class Members not enrolled in CBAS.  Enhanced Case Management Services consist of those "Complex Case Management" and "Person-Centered Planning" services described in the Boiler-Plate 2-Plan Managed Care Contract, and, as applied to Class Members, includes the coordination of the Class Member's specific needs for needed long term care services and supports, whether or not covered under the Medi-Cal program, and periodic in-person consultation with the beneficiary and/or his or her designees. As defined and described in the Boiler-Plate 2-Plan Managed Care Contract:

a.      "Complex Case Management Services" means the systematic coordination and assessment of care and services provided to a subset of managed care enrollees in 2-Plan and GMC counties who require the extensive use of resources and who need help navigating the system to facilitate appropriate delivery of care and services.

b.      "Person-Centered Planning" is a highly individualized and ongoing process to develop individualized care plans that focus on a person's abilities and preferences; person-centered planning includes consideration

7

of the current and unique bio-psycho-social and medical needs and history of the individual member, as well as the member's functional level, support systems, and continuum of care needs.

13.  Fee for Service

"Fee for Service Medi-Cal" or "fee-for-service" or "FFS" refers to a payment model for medical services under Medi-Cal where doctors and other health care providers receive a fee for each service from DHCS such as an office visit, test, procedure, or other health care service.

14.  IPC

"Individualized Plan of Care" or "IPC" means a written plan designed to provide a participant of an adult day health center with appropriate treatment in accordance with the assessed needs of the participant as set forth in title 22, section 54119 of the California Code of Regulations.

15.  Managed Care, Managed Care Plan, MCO

Unless otherwise specified, "managed care" refers to California's system for providing Medi-Cal services through contracts between the Department of Health Care Services and managed care organizations (MCO) or health plans. The term refers to three models of Medi-Cal managed care: the Two-Plan model, the Geographic Managed Care (GMC) model and the County Organized Health Systems (COHS) model.

16.  Nursing Facility-A (NF-A) Level of Care

"Nursing Facility-A (NF-A) Level of Care" is set forth in title 22, sections 51120(a) and 51334(l) of the California Code of Regulations. For purposes of this settlement, sections 51120(a)(1), 51334(l), and 51334(*l*)(1) shall not be construed to preclude individuals who live in non-medical residential care facilities (board and care facilities), or who live at home, from meeting this level of care.

8

17. Parties

The "Parties" to this lawsuit consist of the Plaintiffs, the Plaintiff Class, and Defendants, as defined in this section.

18. Named Plaintiffs

"Plaintiffs" means the representative plaintiffs, Esther Darling; Ronald Bell by his *guardian ad litem* Rozene Dilworth; Gilda Garcia; Wendy Helfrich by her *guardian ad litem* Dennis Arnett; Jessie Jones; Raif Nasyrov by his *guardian ad litem* Sofiya Nasyrova; and Allie Jo Woodard, by her *guardian ad litem* Linda Gaspard-Berry as set forth in the Second Amended Complaint and their successors.

19. Presumptively Eligible for CBAS

Class Members who are presumptively eligible for CBAS are current ADHC recipients who are: likely to meet NF-B level of care (as set forth in 22 Cal. Code Regs. §§ 51334(j) and § 51124), as determined by DHCS, or whose ADHC IPCs indicate a need for assistance or supervision with three (3) of the following ADLs/IADLs: bathing, dressing, self-feeding, toileting, ambulation, transferring, medication management, and hygiene, and one nursing intervention at ADHC, as determined by DHCS' review of all ADHC participants' current IPCs. Presumptively eligible Class Members will transition to fee-for-service CBAS and will receive a face-to-face assessment by DHCS within three (3) months.

20. Regional Centers

"Regional Centers" are non-profit private corporations that contract with the Department of Developmental Services to provide or coordinate services and supports for individuals with developmental disabilities under the Lanterman Act. California has 21 regional centers that serve individuals with developmental disabilities.

## VII.   CLASS DEFINITION AND CERTIFICATION

The parties shall file a Stipulated Class Certification Motion to certify a "Settlement Class" as defined below:

> All Medi-Cal beneficiaries in the State of California for whom Adult Day Health Care benefits will be eliminated under the provisions of AB 97 including those who met or will meet the current eligibility and medical necessity criteria for ADHC at any point prior to the Effective Date of this Settlement; or who will meet the eligibility and medical necessity criteria for CBAS at any point prior to Termination of this Agreement.

The Parties further agree that for the purposes of this Agreement only, Plaintiffs, Esther Darling, Ronald Bell, Gilda Garcia, Wendy Helfrich, Jessie Jones, Raif Nasyrov, and Allie Jo Woodard, will be deemed to be appropriate class representatives for the Settlement Class; that, for purposes of this Agreement only, the Settlement Class will be deemed to meet the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2); and that Plaintiffs' counsel Disability Rights California, National Health Law Program, National Senior Citizens Law Center, AARP Foundation Litigation, and Morrison & Foerster LLP shall continue as class counsel for the Settlement Class, pursuant to Federal Rules of Civil Procedure Rules 23(a), (c) and (g). However, if the court does not approve this Agreement, the Parties agree that Defendants will not be prejudiced or bound by the stipulations in this paragraph or Agreement, and instead, Defendants will be free to contest that the Plaintiffs are appropriate class representatives, and/or that the Settlement Class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)2.

## VIII.   PROVISIONS FOR NAMED PLAINTIFFS

The following Plaintiffs are deemed eligible for CBAS services as set forth in this Agreement and shall be eligible to receive CBAS services at their current ADHC level, at least until a regularly scheduled reassessment as set forth in Section XI.C. of this Agreement:  Ronald Bell, Esther Darling, Gilda Garcia, Wendy Helfrich, Jessie Jones, Raif Nasyrov, and Allie Jo Woodard.

## IX.   AMENDMENT TO THE 1115 WAIVER TO PROVIDE CBAS SERVICES

As soon as practicable, and with the express written support of this effort from Plaintiffs

10

to CMS, Defendants shall seek and secure an amendment to the 1115 Waiver to ensure the provision of CBAS services to eligible Class Members. Such 1115 Waiver amendment shall be consistent with the terms of this Agreement. Under the waiver, CBAS services shall be uncapped in that there is no limitation on the number of eligible persons who can receive CBAS services, so long as those persons are found eligible under the CBAS eligibility criteria, and be provided at no cost to Class Members. The ADHC state plan benefit will not be terminated until the 1115 waiver has been approved, but in any event no sooner than the later of February 29, 2012 or the Effective Date of the Settlement.

## X.  ELIGIBILITY FOR CBAS SERVICES

The following individuals shall meet the criteria for eligibility for CBAS if they meet the criteria of any one or more in the following categories:

A.  Individuals who meet NF-A Level of Care or Above

   1.  Meet NF-A level of care as defined in Section VI of this Agreement, or above;

   AND

   2.  Meet ADHC eligibility and medical necessity criteria contained in sections 14525(a),(c),(d),(e), 14526.1(d)(1),(3),(4),(5), and 14526.1(e) of the California Welfare and Institutions Code.

B.  Individuals who have an Organic, Acquired or Traumatic Brain Injury and/or Chronic Mental Illness

   1.  Have been diagnosed by a physician as having an Organic, Acquired or Traumatic Brain Injury, and/or have a Chronic Mental Illness, as defined in Section VI of this Agreement;

   AND

   2.  Meet ADHC eligibility and medical necessity criteria contained in sections 14525 and 14526.1(d) and (e) of the California Welfare and Institutions Code.

11

3.  Notwithstanding sections 14525(b) and 14526.1(d)(2)(A) of the California Welfare and Institutions Code, the individual must demonstrate a need for assistance or supervision with at least:

 a.  Two (2) of the following ADLs/IADLs: bathing, dressing, self-feeding, toileting, ambulation, transferring, medication management, and hygiene; OR

 b.  One (1) ADL/IADL listed in (a) above, and money management, accessing resources, meal preparation, or transportation.

4.  For eligibility purposes, applicants/recipients do not need to show a need for a service at the center providing CBAS services to be included in the qualifying ADL/IADLs (including money management, accessing resources, meal preparation, and transportation).

C.  Individuals with Alzheimer's Disease or other Dementia

1.  Individuals have moderate to severe Alzheimer's Disease or other dementia, characterized by the descriptors of, or equivalent to, Stages 5, 6, or 7 Alzheimer's Disease;

AND

2.  Meet ADHC eligibility and medical necessity criteria contained in Welfare and Institutions Code sections 14525(a),(c),(d),(e), 14526.1(d)(1),(3),(4),(5), and 14526.1(e).

D.  Individuals with Mild Cognitive Impairment including Moderate Alzheimer's Disease or other Dementia

1.  Individuals have mild cognitive impairment or moderate Alzheimer's Disease or other dementia, characterized by the descriptors of, or equivalent to, Stage 4 Alzheimer's Disease;

AND

2.  Meet ADHC eligibility and medical necessity criteria contained in

12

sections 14525 and 14526.1(d) and (e) of the California Welfare and Institutions Code.

3.    Notwithstanding sections 14525(b) and 14526.1(d)(2)(A) of the California Welfare and Institutions Code, the individual must demonstrate a need for assistance or supervision with two of the following ADLS/IADLS: bathing, dressing, self-feeding, toileting, ambulation, transferring, medication management, and hygiene.

4.    For eligibility purposes, applicants/recipients do not need to show a need for a service at the center providing CBAS services to be included in the qualifying ADL/IADLs.

E.    Individuals who have Developmental Disabilities

1.    Meet the criteria for regional center eligibility as defined in Section VI of this Agreement;

AND

2.    Meet ADHC eligibility and medical necessity criteria contained in sections 14525(a),(c),(d),(e), 14526.1(d)(1),(3),(4),(5), and 14526.1(e) of the California Welfare and Institutions Code.

## XI.    ASSESSMENT FOR CBAS SERVICES

A.    Initial Assessment Process for CBAS Eligibility

1.    DHCS will provide to each ADHC center a list of recipients who have been determined to be:

a.    Categorically eligible for CBAS. Lists to be sent by December 2, 2011.

b.    Presumptively eligible for CBAS. Lists to be provided on a rolling basis, prior to conducting face-to-face assessments at a particular facility.

13

2.   CBAS Screening by ADHC centers:

    a.   The parties shall agree on a CBAS screening tool to be completed by the ADHC centers.  The CBAS screen shall include the ADHC center's recommendation as to whether the Class Member meets or does not meet CBAS eligibility criteria as described in Section X of this Agreement, or whether the Class Member requires a face-to-face assessment to determine initial eligibility for CBAS.  The ADHC center may also identify any Class Members who meet the categorical eligibility criteria who were not identified on the list provided by DHCS.

    b.   By December 9, 2011, or as soon as possible thereafter, and prior to implementing the CBAS screening tool, DHCS shall conduct training for ADHC providers on completion of the tool.

    c.   Each ADHC center will be requested to complete and submit to DHCS, by December 16, 2011, or as soon as possible thereafter, but no later than December 23, 2011, the CBAS screening tool results for all ADHC participants who are not categorically or presumptively eligible for CBAS.

3.   Face-to-Face Initial Assessments:

    a.   Face-to-face initial assessments shall be conducted, prior to the termination of any Class Member's ADHC services, by teams of DHCS nurses with experience in level of care assessments, as set forth in XI.A.3.b. below.  If a face-to-face assessment has not been completed by the date of termination of ADHC as an optional Medi-Cal benefit, affected Class Members shall transition from ADHC to CBAS at their current level of service, without interruption, and shall be treated as presumptively eligible Class

14

Members as set forth in Section XI.B.2. of this Agreement.

b.    Class Members shall receive face-to-face assessments when:

    i.    The ADHC center recommends them as CBAS eligible on the CBAS screening tool, or as needing a face-to-face assessment;

    ii.    Upon request if the ADHC center does not recommend them as CBAS eligible;

    iii.    The ADHC center does not complete a CBAS screening tool and the individual has not been determined to be categorically or presumptively eligible for CBAS.

c.    The parties shall agree upon a tool and protocol for conducting face-to-face assessments for CBAS eligibility. The tool and protocol shall be Beta tested at ADHC centers agreed upon by the parties and finalized by December 2, 2011, or as soon as possible thereafter.

d.    DHCS, in its discretion, may conduct a sample of face-to-face assessments to determine CBAS eligibility. DHCS may not base a determination of ineligibility on a sample.

e.    Prior to conducting face-to-face assessments, DHCS shall conduct training for assessment team staff. The training shall:

    i.    By conducted jointly by DHCS and agreed-upon ADHC staff, with clear roles and responsibilities for ADHC trainers;

    ii.    Be in accordance with the assessment protocol as described in Section XI.A.3.c.; and

    iii.    Be in person in 2-3 locations in the State.

f.    If the Class Member declines to be assessed, after agreed-upon

15

steps have been taken to notify and inform the Class Member about the CBAS assessment process, as set forth in Section XV of this Agreement, the Department shall not be obligated to assess the Class Member for, or provide CBAS services to that Class Member.

4.    Second level review:  Second-level reviews shall be conducted:

    a.    In all cases in which the outcome of a face-to-face assessment is that a Class Member is not eligible for CBAS.  However, if the Class Member was identified by the ADHC center as not meeting CBAS eligibility criteria, a second level review will be conducted only upon the request of the Class Member and/or Class Member's family.

    b.    Prior to the termination of any Class Member's ADHC or CBAS services except as set forth in (a) above, however, those ADHC recipients for whom a second level review is not completed and the Class Member is not notified of the outcome prior to the elimination date of the ADHC benefit, the Class Member may transition to CBAS at their current level of service, without interruption, and shall be treated as presumptively eligible Class Members as set forth in Section XI.B.2. of this Agreement.

    c.    By a DHCS nurse supervisor, who reviews the completed assessment tool used in the face-to-face assessment as well as supporting documentation, notes, and other medical records as necessary.  The nurse supervisor shall, in the exercise of the nurse's discretion, contact the ADHC center, Class Member and/or family as necessary to clarify or augment any pertinent information needed to make an informed decision.

16

        d.      Prior to finalizing a determination of ineligibility for CBAS, the DHCS nurse supervisor shall contact the ADHC center.

B.    Actions Based on Initial Eligibility Determinations for CBAS

    1.    <u>Categorically Eligible Class Members:</u>

Categorically eligible Class Members will transition from ADHC to CBAS as a fee-for-service program without interruption and at their current level of service.  In addition, they shall:

        a.      Be provided with information and assistance in enrolling in CBAS as set forth in Section XII.A. of this Agreement; and

        b.      Continue to be eligible for CBAS at their current level of service at least until a regularly scheduled reassessment as set forth in Section XI.C. of this Agreement.

    2.    <u>Presumptively Eligible Class Members:</u>

        a.      Presumptively eligible Class Members will transition from ADHC to CBAS as a fee-for-service program without interruption, and at their current level of service, and will continue to be eligible for CBAS at their current level of service at least until a face-to-face assessment by DHCS as set forth in Section XI.A.3. of this Agreement.

        b.      After a face-to-face assessment, presumptively eligible Class Members who are found eligible for CBAS shall:

            i.      Be provided with information and assistance in enrolling in CBAS as set forth in Section XII.A. of this Agreement; and

            ii.      Continue to be eligible for CBAS at their current level of service at least until a regularly scheduled reassessment as set forth in Section XI.C. of this Agreement.

        c.      If, after a face-to-face assessment, a presumptively eligible Class

Member is determined to be ineligible for CBAS, he/she shall receive a second level review, as set forth in Section XI.A.4. of this Agreement. If the second level review determines that the Class Member is not CBAS eligible, the due process provisions of Sections XIV.A., B., and D., including aid paid pending the hearing decision, shall apply.

    d.    CBAS services shall not be terminated until the later of, at the Class Member's option:

        i.    The outcome of any appeal; or

        ii.    DHCS or the managed care plan, as appropriate, has developed a care plan and referred the Class Member to the services identified in the care plan, notwithstanding an existing or expired Treatment Authorization Request for ADHC.

    e.    If a presumptively eligible Class Member is found ineligible for CBAS, the ADHC center shall be asked to complete a Discharge Plan and provide a copy of the Discharge Plan to the Class Member, DHCS, and the managed care plan that serves the Class Member (if applicable).

    f.    CBAS providers shall be reimbursed for services provided to presumptively eligible Class Members until such time as the Class Member's CBAS services are terminated in accordance with Section XI.B.2.d. of this Agreement.

3.    <u>Non-Presumptively Eligible Class Members who Receive Face-to-Face Assessment:</u>

    a.    If, after a face-to-face assessment, a Class Member is determined to be eligible for CBAS, the Class Member will transition from

18

ADHC to CBAS as a fee-for-service benefit without interruption, and at their current level of service. Such Class Members shall continue to be eligible for CBAS at their current level of service at least until a regularly scheduled reassessment as set forth in Section XI.C. of this Agreement. In addition, they shall:

    i.    Be provided with information and assistance in enrolling in CBAS as set forth in Section XII.A. of this Agreement; and

    ii.    Continue to be eligible for CBAS at their current level of service at least until a regularly scheduled reassessment as set forth in Section XI.C. of this Agreement.

b.    If, after a face-to-face assessment, a Class Member who is not presumptively eligible is determined to be ineligible for CBAS, he/she shall receive a second level review, as set forth in Section XI.A.4. of this Agreement. If the second level review determines that the Class Member is not CBAS eligible, the due process provisions of Sections XIV.A. and B. of this Agreement shall apply.

c.    ADHC services shall be available until DHCS or the managed care plan, as appropriate, has developed a care plan and referred the Class Member to the services identified in the care plan, notwithstanding an existing or expired Treatment Authorization Request at the Class Member's option, but no later than the date that ADHC is eliminated as a Medi-Cal optional benefit, except as set forth in Section XI.B.5. of this Agreement.

d.    If a Class Member is found ineligible for CBAS, the ADHC center shall be asked to complete a Discharge Plan and provide a copy of the Discharge Plan to the Class Member, DHCS, and the managed

care plan that serves the Class Member (if applicable).

4.   Class Members whose ADHC centers conclude on the CBAS screening tool that they do not meet CBAS eligibility criteria:

    a.   Class Members whose ADHC centers determine that they do not meet CBAS eligibility criteria shall be immediately given information about their option to:

        i.   receive "Enhanced Case Management" and other services through DHCS or their managed care plan, as set forth in Section XIII;

        ii.   request a face-to-face assessment, as set forth in Section XI.A.3. of this Agreement; and

        iii.   request a hearing, pursuant to Sections XIV.A. and B. of this Agreement.

    b.   The ADHC center shall be asked to complete a Discharge Plan and provide a copy of the Discharge Plan to the Class Member and either DHCS or the managed care plan that serves the Class Member.

    c.   ADHC services shall be available until the outcome of any requested face-to-face assessment and any requested second level review; and DHCS or the managed care plan, as appropriate, has developed a care plan and referred the Class Member to the services identified in the care plan, notwithstanding an existing or expired Treatment Authorization Request for ADHC, but not later than the date that ADHC is eliminated as a Medi-Cal optional benefit, except as set forth in Section XI.B.5 of this Agreement.

5.   Class Members who have not been assessed or who do not have a care plan that has been acted upon:  If a face-to-face assessment has not been

20

completed, and/or a Class Member does not have a care plan that has been acted upon by DHCS or the managed care plan, as appropriate, by the date of termination of ADHC as an optional Medi-Cal benefit, such Class Members shall transition from ADHC to CBAS at their current level of service, without interruption, and shall be treated as presumptively eligible Class Members as set forth in Section XI.B.2. of this Agreement. ADHC and CBAS providers shall be reimbursed for services provided to such Class Members until such time as the Class Member's CBAS benefit is terminated as set forth above in Section XI.B.2.d. of this Agreement.

C.   Reassessment for CBAS Eligibility and Level of Service Determination

1.   No sooner than six (6) months after being determined eligible for CBAS or transitioning to CBAS through managed care, whichever is later, or upon a change in circumstances requiring an increase in the level of CBAS services, Class Members may be reassessed for CBAS eligibility.

2.   Reassessments shall be conducted by DHCS or the managed care plan, using the assessment instrument and process set forth in Section XI.A.3.c. of this Agreement.

3.   CBAS providers shall be responsible for determining a recommended level of service for each participant.

4.   Reassessments and service determinations by managed care plans:

a.   Prior to conducting assessments, reassessments, and/or level of service determinations, managed care plan staff shall be trained by DHCS in accordance with Section XI.A.3.e.

b.   Managed care plans shall be required to include a social worker on their assessment team, either in-house or by contract. If the requested level of service is for continuation at the same level of service, the managed care plan may approve the request via a paper

21

review of the level of service recommendation and any supporting documentation provided by the CBAS provider.

    c.    Any denial or reduction in a requested level of service shall occur only after a face-to-face review, using the process described in Section XI.A.3.

    d.    CBAS services may not be denied or reduced pursuant only to a paper review.

D.    Initial Assessments for Future CBAS Applicants

    1.    Initial assessments for CBAS shall be conducted in the manner described in Section XI.A.3.c. of this Agreement. Individuals who are not managed care enrollees at the time of application or referral shall be assessed by DHCS. Upon being determined eligible for CBAS, the procedures set forth in Section XII.A. of this Agreement regarding notice and obtaining CBAS services shall apply. Upon a determination that a CBAS applicant is not eligible for CBAS, the due process provisions of Section XIV of this Agreement shall apply. Initial assessments for CBAS shall be completed when:

        a.    A referral is made for CBAS services, including by a physician, hospital, nursing facility, the individual or his or her family, a CBAS provider; or

        b.    A managed care medical assessment indicates that the individual may be eligible for CBAS.

    2.    After CBAS has become a managed care benefit, except for those recipients exempted from enrolling in managed care, individuals requesting CBAS benefits must be enrolled in a managed care plan. The managed care plan will be responsible for assessing individuals for eligibility for CBAS services.

3.  Managed care plans shall have a mechanism for assessing applicants for CBAS and determining eligibility on an expedited basis for individuals who are currently in a hospital or nursing facility and whose discharge plan includes CBAS, or who are at immediate risk of admission to a nursing facility.

## XII. PROVISION OF CBAS SERVICES

A.  Enrollment in CBAS

Class Members who are found eligible for CBAS services shall be promptly notified of their eligibility and provided with information on enrolling in managed care, as applicable, and the process for obtaining CBAS services. Such notice shall be provided consistent with Section XV of this Agreement. Eligible Class Members shall transition from ADHC to CBAS as a fee-for-service benefit, without interruption, and at their current level of service.

B.  CBAS Providers

The Department shall take all necessary and timely steps to ensure adequate provider capacity including:

1.  The Department shall develop Standards of Participation in collaboration with ADHC providers.

2.  The Department shall consider and approve CBAS provider applications on a rolling basis, within 14 days of receipt of the completed CBAS provider application, beginning on the date of execution of this agreement.

3.  Licensed CBAS providers shall be reimbursed for provision of CBAS services using the rates per day set forth in Section XII.C. of this Agreement. Such rates shall be the prevailing rates for CBAS whether financed through the Medi-Cal fee-for-service mechanism or through Medi-Cal managed care.

4.  Using due diligence to: provide for sufficient CBAS capacity in

23

geographic areas where ADHC services exist at the time of the execution of this Settlement Agreement, including an adequate number of providers so that Class Members can transition seamlessly from ADHC to CBAS without interruption in services due to waitlists; language and cultural competence to meet the needs of the CBAS eligible population; and program specialization to meet the specific health needs of the CBAS eligible population.  In the event that there is not sufficient CBAS provider capacity, Class Members shall receive unbundled CBAS component services based on assessed need.

5.  The Department shall monitor CBAS provider capacity to ensure sufficient access in geographic areas where ADHC is provided at the time of execution of this Agreement and use due diligence to address access issues.  This shall include consulting with CBAS providers and Plaintiffs' counsel regarding access barriers and possible solutions.

C.  CBAS Provider Reimbursement Rates

1.  The CBAS Reimbursement Rate per day of CBAS service provision shall be at least equivalent to the all-inclusive adult day health care payment per day of attendance in effect on June 1, 2011 (which is $76.27 minus 10%, except in exempted Medical Service Study Areas which receive $76.27) for each approved CBAS participant, including rates that are at least equivalent to rates for initial assessment and transition visits.

D.  Limitations on Medi-Cal Coverage of the CBAS Benefit

1.  From the date of elimination of the ADHC benefit to when CBAS becomes a managed care benefit, CBAS services will be available as a FFS benefit to CBAS-eligible Class Members, regardless of whether they receive Medi-Cal benefits on a fee-for-service (FFS) basis or are enrolled in Medi-Cal managed care.

24

2.    No sooner than July 1, 2012, CBAS will be a "covered service" under Medi-Cal managed care in COHS, GMC and 2-Plan Model counties. As of that date, Medi-Cal managed care plans will be financially responsible for providing CBAS services to CBAS-eligible Class Members. Medi-Cal Fee-For-Service will continue to be financially responsible for providing CBAS services to those CBAS-eligible Class Members residing in geographic areas where managed care is not available, or who are not enrolled in Medi-Cal managed care based on the granting of a Medical Exemption Request (MER), and for those individuals who are not eligible for Medi-Cal managed care.

3.    No sooner than July 1, 2012, for all CBAS-eligible Class Members who reside in counties where Medi-Cal managed care is available and are eligible for Medi-Cal managed care enrollment, CBAS will be available only as a Medi-Cal managed care benefit. In accordance with guidelines set forth in Section XII.F.2., notice of this change shall be sent to all CBAS-eligible Class Members living in counties with Medi-Cal managed care. Managed care plans will be financially responsible for the provision of CBAS services to eligible Class Members.

4.    No sooner than July 1, 2012, Medi-Cal FFS will no longer reimburse CBAS providers for services rendered to CBAS-eligible Class Members who reside in counties where Medi-Cal managed care is available and are eligible for Medi-Cal managed care enrollment. Medi-Cal FFS will continue to provide coverage for CBAS services for Class Members who do not reside in counties where Medi-Cal managed care is available or who are otherwise ineligible for Medi-Cal managed care enrollment.

E.    FFS Provision of CBAS Services

1.    FFS Coverage of CBAS: The Medi-Cal Fee-for-Service program shall be

25

responsible for the provision of CBAS services to CBAS-eligible Class
Members subject to the limitations set forth in Section XII.D.

2.  Execution of Provider Agreements: No later than the date of termination
    of the ADHC benefit, DHCS shall take all necessary and timely steps to
    have in place provider agreements with approved CBAS providers to
    provide CBAS services on a FFS basis to all eligible Class Members.

F.  Medi-Cal Managed Care Provision of CBAS Services

1.  Managed Care Coverage of CBAS: Medi-Cal managed care plans shall be
    responsible for the provision of CBAS services to CBAS-eligible Class
    Members subject to the limitations set forth in Section XII.D. of this
    Agreement.

2.  Managed Care Enrollment:

    a.  The Defendants shall passively enroll into Medi-Cal managed care
        plans effective no sooner than 30 days prior to the date that CBAS
        becomes a managed care benefit all CBAS-eligible Class Members
        receiving CBAS services in FFS who are eligible to enroll in
        Medi-Cal managed care. The passive enrollment process will
        consider an individual's current providers when making the
        assignment to a plan.

    b.  Dually eligible Class Members will remain voluntary Medi-Cal
        managed care enrollees and will retain the right to deny the passive
        enrollment or disenroll from Medi-Cal managed care at anytime.

    c.  Class members eligible for passive enrollment will receive a
        written notice 90 days prior to the enrollment effective date
        informing them of the following:

        i.  They will lose access to CBAS services if they do not
            enroll in a Medi-Cal managed care plan by the date that

26

CBAS becomes a managed care benefit.

ii.    They will be passively enrolled into Medi-Cal managed care plans, effective 30 days prior to the date CBAS becomes a managed care benefit, unless they choose a plan before then or affirmatively decline enrollment into managed care.

iii.    How to enroll in managed care prior to 60 days before CBAS becomes a managed care benefit.

iv.    How to decline enrollment in managed care, and instructions for how to disenroll from managed care, prior to 60 days before CBAS becomes a managed care benefit. Information on disenrollment options will only be provided to dual eligibles.

v.    Information about the managed care plans they have the option to join.

vi.    A toll-free phone number to call to request assistance with enrollment decisions.

d.    Class Members who do not make a decision to either enroll in a plan or opt-out of the passive enrollment process after receiving the first notice will receive a second notice 60 days prior to the managed care enrollment effective date.

e.    Class Members who do not make a decision to either enroll in a plan or opt-out of the passive enrollment process after receiving the second notice will receive a follow-up phone call from Health Care Options.

f.    Class members who do not make a decision to either enroll in a plan or opt-out of the passive enrollment process after receiving

27

the second notice and second follow-up call will receive a third notice 30 days before the managed care enrollment effective date. This notice will make clear that if the individual takes no action the planned passive enrollment will take effect.

g.      When Class Members eligible for passive enrollment choose a plan, opt-out of the passive enrollment or take no action and are enrolled in a plan, they will receive a letter confirming their enrollment status. If the individual will be enrolled in a plan, the notice will indicate the plan and the date the enrollment takes effect.

h.      DHCS counsel shall consult with Plaintiffs' counsel about notices and take necessary and timely steps to resolve Plaintiffs' counsel's concerns.

i.      All notices will be translated and provided to Class Members in the 13 Medi-Cal threshold languages.

j.      In addition to providing notices as outlined above, the Defendants will hold at least two webinars for CBAS providers and Class Members to explain the Medi-Cal managed care enrollment process.

k.      Enrollment into Medi-Cal managed care plans and care management activities conducted by the plans shall not impede Class Members' access to Medicare providers or services. Class Members accessing Medicare services through another plan or through Fee-for-Service Medicare maintain the right to see any Medicare provider that will accept them as a patient and to choose their own primary care physician.

l.      Nothing in this agreement shall interfere with Class Members'

28

eligibility to participate in new pilot projects and demonstrations that expand services or increase care coordination and integration.

3. <u>Amendments to Managed Care Contracts</u>: Prior to the date CBAS becomes a managed care benefit, all contracts between managed care plans and DHCS ("Plan Contracts") for the provision of Medi-Cal managed care will be amended to reflect the following terms and conditions:

    a.    CBAS is among those "covered services" that Plans must provide or arrange for all members when medically necessary, in geographic areas where ADHC was available at the time of execution of this Agreement. In the event that there is not sufficient CBAS provider capacity, Class Members shall receive unbundled CBAS component services based on assessed need. Nothing in this Agreement will prohibit Plans from offering CBAS in any geographic area if they so choose.

    b.    When a Class Member is determined to be eligible for CBAS in a geographic area where ADHC was available at the time of execution of this Agreement, and where CBAS is currently available, and chooses to receive CBAS, that Class Member's managed care plan is required to finance and provide or arrange for the provision of CBAS services.

    c.    Plans are permitted to provide or arrange for the unbundled provision of CBAS-component services to eligible Class Members. Plans must offer CBAS-eligible Class Members the option of receiving CBAS as a bundled service provided by a Plan-contracted CBAS provider. However, in the event that there is not sufficient CBAS provider capacity, Class Members shall receive

unbundled CBAS component services based on assessed need.

    d.    Plans are obligated to maintain contracts with and enable eligible Class Members to receive CBAS services through all DHCS-approved CBAS providers within the Plan Service Area. These contracts must be in place prior to the effective date of Section XII.D.3. Plans are required to report CBAS-specific data to DHCS.

    e.    Plans are required to conduct assessments and reassessments for CBAS eligibility and level of service determinations in accordance with Sections XI.C. and D. of this Agreement.

    f.    Plans are required to reimburse CBAS providers at the prevailing CBAS reimbursement rate per day set forth in Section XII.C.

4.    <u>Payments to Managed Care Plans:</u>

Prior to the date that CBAS becomes a managed care benefit, DHCS will develop in partnership with managed care plans an actuarially sound per-member-per-month capitation rate that accurately reflects the costs, including administrative and reporting costs, of providing CBAS services to eligible Class Members. Once developed, this rate will be the amount managed care plans are reimbursed monthly to fulfill the contractual responsibilities outlined above.

G.    Until such time that CBAS is an approved and available service, Class Members may apply for ADHC services. Class Members shall be approved for ADHC services consistent with eligibility and medical necessity criteria contained in sections 14525 and 14526.1(d) and (e) of the California Welfare and Institutions Code, subject to TAR approval. However, TAR approval for these Class Members shall not extend beyond February 29, 2012, or the Effective Date of the Settlement, whichever date is later.

## XIII.  ENHANCED CASE MANAGEMENT SERVICES FOR CLASS MEMBERS NOT ENROLLED IN CBAS

A.  Entitlement to Enhanced Case Management Services

Each Class Member not enrolled in CBAS shall, prior to the termination of ADHC benefits, receive Enhanced Case Management Services as defined in Section VI of this Agreement.  Class Members shall have the option to receive Enhanced Case Management Services on a fee-for-service basis or, for eligible Class Members, through Medi-Cal managed care (irrespective of whether the Class Member's county of residence utilizes a COHS, 2-Plan, or Geographic Managed Care model).

B.  Notice of Entitlement

Non-CBAS-eligible Class Members will receive notice of the services available to them under the terms of this Agreement and the option to receive those services through either Medi-Cal managed care or FFS.  The notice will include, at a minimum, information about the specific services available, options for how to receive the services, any differences between services offered in managed care or FFS, and instructions for accessing the services, as set forth in Section XV of this Agreement.  The notice will also include a phone number Class Members can call for assistance in understanding their options and making decisions.

C.  Provision of Enhanced Case Management Services through Medi-Cal Managed Care

DHCS shall require managed care plans ("Plans") to provide or contract to provide Enhanced Case Management Services as defined in this Agreement to Class Members.  No later than the date of termination of the ADHC benefit, contracts between DHCS and Plans for the provision of Medi-Cal managed care services ("Plan Contracts") shall be amended to:

1.  Reflect Plan obligations to report the number of Class Members who

31

received Enhanced Case Management and claims paid data regarding services received by Class Members.

2. Clarify that enrollment into Medi-Cal managed care and care management activities conducted by Plans shall not impede Class Members' access to Medicare providers or services. Class Members who access Medicare services through another plan or through fee-for-service Medicare maintain the right to see any Medicare provider that will accept them as a patient and to choose their own primary care physician.

D. Managed Care Rate-Setting

Prior to the elimination of the ADHC benefit, DHCS will develop an actuarially sound per-member-per-month capitation rate for Medi-Cal managed care plans that accurately reflects the costs of providing Enhanced Case Management Services to enrolled Class Members.

E. Provision of Enhanced Case Management Services as a Fee-for-Service Medi-Cal Benefit

No later than the date of termination of the ADHC benefit, DHCS shall have in place contracts to provide Enhanced Case Management Services on a FFS basis to all Class Members not enrolled in Medi-Cal managed care. DHCS shall contract in such a way as to comport with standards for provider capacity and service access and availability set forth in Section XII.B.4. of this Agreement. Contracts shall include requirements for quality assurance, monitoring and data collection. DHCS shall retain ultimate responsibility for ensuring the adequacy and quality of service provision.

F. Nothing shall preclude DHCS or managed care plans from contracting with CBAS centers to provide Enhanced Case Management or other services to non-CBAS-eligible Class Members or other individuals.

## XIV. DUE PROCESS/APPEALS

32

A.    Class members shall receive those notices of adverse actions and opportunity for hearings and to file appeals and grievances they are entitled to under federal and state law.

B.    Actions taken by either DHCS or a managed care plan that will trigger the right to written notice of adverse actions, an opportunity for a hearing, and to file appeals and grievances determination made include:

    1.    A final determination that a Class Member is not eligible for CBAS, including such a determination after a regularly scheduled reassessment.

    2.    A final determination that a Class Member is eligible for CBAS services in a different amount or duration than that recommended by the CBAS provider, including such a determination made after a regularly scheduled reassessment.

    3.    A final determination that a Class Member is not eligible for enhanced case management services or other services.

    4.    DHCS adopts an ADHC center's determination, based on the CBAS screening tool, that an individual is not eligible for CBAS services.

    5.    When an individual who is not currently eligible for ADHC services applies for ADHC services before the ADHC program has been eliminated, and DHCS determines that the individual is not currently eligible for ADHC or CBAS services, current procedures for grievances and appeals shall apply.

C.    Among other rights and protections existing in federal and state law, Class members may request an Independent Medical Review of a plan's internal review decision. For appeals related to CBAS services, the IMR will be conducted by appropriate nursing staff at the Department of Managed Health Care using the second level review process described above.

D.    Aid Paid Pending

1. <u>Managed Care</u>: As guaranteed by state and federal law, Class Members receiving CBAS prior to a plan decision to reduce or terminate CBAS are entitled to continue receiving services at the levels they were receiving before the adverse decision pending the outcome of an appeal provided that they meet the filing deadlines provided in state and federal law.

2. <u>DHCS</u>: Class members are entitled to receive CBAS services at their current level pending the outcome of a hearing challenging DHCS' decision to reduce or terminate CBAS services if:

   a. They have been determined to be presumptively or categorically eligible for CBAS, as defined in Section XI of this Agreement; or

   b. DHCS has not completed an assessment, or implemented a care plan in accordance with Section XI.B.5.; or

   c. They are fee-for-service CBAS recipients.

3. CBAS providers shall be reimbursed for services provided to Class Members who are entitled to and received aid paid pending a hearing decision pursuant to this Section.

## XV. NOTICE PLAN

A. Class members shall be entitled to notice, access to information and assistance in order to secure CBAS services and Enhanced Case Management as set forth in this Agreement. To this end, the Parties shall engage in the following:

1. Notice shall be provided as set forth below at each stage in the Agreement, including regarding terms of the settlement agreement and filing of objections, eligibility or ineligibility for CBAS and/or Enhanced Case Management and other services, right to and process for requesting an assessment or reassessment for CBAS eligibility, notice of location of CBAS providers and how to enroll or transfer, and notice of enrollment in a managed care plan, as appropriate.

34

2. Language contained in all notices required under this Agreement, including those specified under Sections XI-XIV of this Agreement, shall be drafted in consultation with Plaintiffs' counsel prior to distribution, except as set forth in Section XII.F.2.h. All notices will be in plain language, in the 13 Medi-Cal threshold languages, and provide accurate information on how to access assistance by phone or in person with DHCS, managed care plans and Plaintiffs' counsel, as appropriate.

3. All notices will be available in alternative formats, including electronic versions, tapes and in Braille, as feasible. DHCS shall provide or arrange for fax notifications to be sent to ADHC/CBAS providers. DHCS and Disability Rights California will post all notices on their websites.

4. To enable ADHC and CBAS providers to assist Class Members to understand and exercise their options pursuant to this Settlement Agreement, DHCS shall hold timely webinars regarding the terms of this Settlement Agreement, the CBAS assessment process and the enrollment process for CBAS in managed care, and others as appropriate.

5. DHCS shall make all reasonable efforts to notify and provide assistance to Class Members in securing the benefits set forth in the Agreement. This shall entail taking all of the following actions for each Class Member as appropriate: sending written notice to the Class Member at his/her last known address, sending individual written notice to the Class Member at the ADHC where the individual attends, and providing telephonic or in person assistance with questions regarding actions proposed or decisions which need to be made by Class Members. If a Class Member is not currently attending an ADHC program or his/her mail is returned, DHCS will make three attempts to call the Class Member to provide information by telephone and attempt to locate the Class Member to provide written

notice.

B.     The provisions set forth in Section A above shall apply to Class Members who are not current ADHC recipients, but who attended ADHC at any time since July 1, 2011.

## XVI.  DATA COLLECTION, REPORTING, AND QUALITY ASSURANCE

A.     Data Collection and Reporting

The Parties shall engage in the following data collection, reporting and information exchange activities, as set forth below:

1.     On a monthly basis, during the transition period and for three months after conversion to Managed Care, Plaintiffs' counsel and DHCS counsel shall meet for the purpose of keeping the Parties informed of progress under the Settlement Agreement and discussing implementation issues. Defendants shall provide data to plaintiffs during or in advance of these meetings pursuant to the agreements as set forth in Section XVI.A.6. below. Additional meetings, beyond this time period shall be upon agreement by parties.

2.     On a semi-annual basis, DHCS shall provide written progress reports to Plaintiffs' counsel as to activities undertaken to implement the terms of each section of the Settlement Agreement;

3.     Accompanying the progress reports, or as soon as available, DHCS shall provide information to Plaintiffs' counsel regarding the weblinks for documents posted on line and copies of notices not available on line, including sample notices and information provided to Class Members and providers, managed care plan policies related to settlement implementation as approved by the Department, Medicaid Waiver applications, amendments and approvals necessary to implement this Settlement Agreement, contracts with managed care health plans, training

36

materials developed pursuant to Section XI.A.3.e., DHCS' Annual
Monitoring Plan Public Reports, and other non-privileged documents or
information that pertain to implementation of the Settlement Agreement
pursuant to the agreements as set forth in Section XVI.A.6. below;

4.  On a semi-annual basis, DHCS will provide Plaintiffs' counsel with the
Named Plaintiffs' files which include the following documents, to the
extent that the Department has them: eligibility screen, assessments
completed, results of assessments, care plan(s), and medical and enhanced
case management services provided.

5.  DHCS shall develop and maintain a system to collect, analyze, and report,
at the aggregate level, on the transition of beneficiaries out of ADHC and
the implementation of the CBAS program. Such aggregate data shall be
provided to Plaintiffs' counsel on a schedule to be determined pursuant to
the agreements made by way of Paragraph XVI.A.6 below.

6.  Within 21 days of the signing of this Agreement by the Parties, the Parties
will meet and agree upon data collection and reporting activities for the
purpose of implementation and monitoring this Agreement. Such data
collection shall include information on an individual Class Member basis
and in the aggregate, with sufficient specificity to track progress made
under Sections XI, XII, XIII and XIV of the Agreement, including the
outcomes of the screening and assessment of Class Members for CBAS
services; CBAS provider applications and capacity, including Defendants'
monitoring activities regarding access to CBAS services; transition of
eligible Class Members from ADHC to CBAS, without interruption; the
provision and payment of CBAS through managed care plans and fee-for-
service options; the transition of eligible Class Members to and provision
of enhanced case management and other services; and the number and

outcome of hearings and grievances. The parties shall also agree on a process for provision of a random sample of Class Member files to Plaintiffs' counsel subject to an agreement related to federal and state privacy considerations, including seeking a protective order as necessary.

B.    Quality Assurance

It is the responsibility of Defendants to provide quality assurance monitoring and oversight to all Class Members. In carrying out this obligation, the following general standards shall apply:

1.    Quality assurance activities performed by Defendants shall include: monitoring the quality and accuracy of the screening and assessment of Class Members for CBAS services and the actual provision of services to Class Members by providers, managed care plans and APS, and shall include reviews of data, random sampling of files and in person reviews with individuals whose files are examined.

2.    Quality assurance activities shall be focused on measuring whether services are provided to Class Members' in accordance with this Agreement.

## XVII. FORM OF THE JUDGMENT

The Parties will join in asking the Court to enter a judgment approving this Settlement Agreement and to retain jurisdiction over this matter for the purpose of assuring compliance with the terms of the Settlement Agreement until the termination of this Agreement as set forth in Section XXII of this Agreement.

## XVIII. SCOPE OF THE AGREEMENT

This Settlement Agreement fully and finally settles all claims and causes of action alleged in the Complaint, the First Amended Complaint, and the Second Amended Complaint, filed on June 2, 2011, against all Defendants. Defendants shall, upon the effective date of the settlement, immediately take all necessary steps to withdraw the

pending matter in the Ninth Circuit U.S. Court of Appeal, Case No. 10-15635.

## XIX. JUDICIAL APPROVAL OF THE SETTLEMENT

A. Joint Application for Preliminary Approval

The Parties agree to file a joint application with the Court, and to take all other steps necessary, to request a fairness hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and to seek the Court's preliminary approval of the Settlement Agreement. The Parties will cooperate in presenting this Agreement to the Court at the fairness hearing.

If the Court withholds its approval of this Settlement Agreement or the settlement for any reason, or if any post-judgment Motions or appeals are filed by third parties, the Parties shall meet and confer to determine whether this Settlement Agreement can be amended or modified in a manner so as to secure the Court's approval. If this is not attainable, this Settlement Agreement shall be null and void.

B. Preliminary Approval and Notice to Class

Upon the Court's granting of preliminary approval of the settlement and the Settlement Agreement, the Parties will provide notice to the Settlement Class in a manner agreed upon by the Parties and/or ordered by the Court pursuant to Federal Rule of Civil Procedure 23(e). The Parties will jointly prepare a notice of this Settlement Agreement which describes the Agreement, the process for filing written objections and includes the date for the fairness hearing. The notice shall be sent by Defendants to all Class Members.

C. Elimination of ADHC

The parties agree that implementation of activities pursuant to this Settlement Agreement may occur prior to the Effective Date of Settlement; however, the ADHC program shall not be eliminated prior to the Effective Date of the Settlement. If the Effective Date of the Settlement will occur after the anticipated

termination date of ADHC, Defendants shall continue the ADHC program until the Effective Date of the Settlement.

## XX.    ATTORNEYS' FEES AND COSTS AND MONITORING

A.    Defendants agree to pay to Plaintiffs' counsel the sum of $2.2 million to cover all of Plaintiffs' claims for past attorneys' fees and costs in this litigation up to and including the date of execution of this Agreement ("past fees"). In addition, Plaintiffs' counsel will submit invoices for actual fees and costs incurred for further activities involving securing approval of, monitoring of, and any dispute resolution regarding this Settlement Agreement until the termination of this Agreement in accordance with Section XXII ("future fees"). Such future fees shall not exceed $400,000 in total and shall be billed at current rates for time and expenses incurred. These combined amounts, for past and future fees, will resolve any and all claims for attorneys' fees and costs by any of Plaintiffs' counsel, including but not limited to, claims by or on behalf of, Howrey LLP and/or its successors, Morrison & Foerster LLP, Disability Rights California, National Senior Citizens Law Center, the National Health Law Program and AARP Foundation Litigation.

B.    The parties agree that starting 90 days after the Effective Date of the Settlement, interest shall accrue at the legal rate of seven percent per annum on any outstanding balance of the fees and costs due to Plaintiffs.

## XXI.    DISPUTE RESOLUTION PROCESS

A.    Before filing any motion to enforce the terms of this Agreement, the Party seeking relief shall contact counsel for the opposing party to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. If the parties mutually consent, they may seek to mediate the dispute with Magistrate Judge Nathanael Cousins or any other mutually acceptable mediator. If the dispute cannot be resolved with the assistance of a mediator, then

40

such motion to enforce shall not be filed until thirty (30) days after the parties have conferred to discuss the motion, or forty-five (45) days after the Party has given notice of a dispute, whichever is sooner, unless either party is threatened with irreparable harm, in which case the motion can be filed in a shorter period of time.

B.   This dispute resolution process is in addition to any non-class based remedies, including due process grievance and hearing procedures, available to individual plaintiffs and Class Members for resolution of their individual disputes regarding eligibility and/for appropriateness of services and benefits based on need.

## XXII. DURATION OF THE TIME PERIOD TO SATISFY THE TERMS OF THE AGREEMENT AND JUDGMENT.

The Court will retain jurisdiction over this lawsuit until 30 months after the Effective Date of the Settlement, at which time the Court's jurisdiction will expire.  The parties agree that this expiration of jurisdiction shall not be extended, for any reason, beyond the 30-month period following the Effective Date of the Settlement.  The parties also agree that no provision of the Settlement Agreement will be enforceable beyond the 30-month period following the Effective Date of the Settlement, and the parties will not seek to enforce any provision of the Settlement Agreement beyond the 30-month period following the Effective Date of the Settlement.

## XXIII. NO ADMISSION OF LIABILITY

Defendants expressly deny each and all of the claims and contentions alleged against them by the Plaintiffs in this action.  This Agreement, anything contained herein, and any negotiations or proceedings hereunder shall not be construed as or deemed to be an admission, presumption, evidence of, or concession by Defendants of the truth of any fact alleged or the validity of any claim which has or could have been asserted in this action, or of the deficiency of any defense which has or could have been asserted in this action or of any wrongdoing or liability whatsoever.

This Agreement, the fact of its existence, and any term hereof shall not be construed as an admission by Defendants or used as evidence against Defendants in any civil, criminal, or administrative action or proceeding except as described below.

This Agreement, the fact of its existence, and any term hereof shall be admissible in evidence in any proceedings in the instant lawsuit.

## XXIV. ADDITIONAL PROVISIONS

Plaintiffs do not seek damages in this case. This Settlement Agreement cannot be raised as a defense to any future tort action or other damages claim by an individual class member against one or more of the Defendants in this action.

The parties agree to use their best efforts to carry out the terms of the Agreement. At no time shall any of the parties or their counsel seek to solicit or otherwise advise Class members to submit objections to the Agreement or to appeal from the order giving final approval to the Agreement and entry of the proposed Stipulated Judgment.

This Agreement and the proposed Stipulated Judgment contain all the terms and conditions agreed upon by the parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Agreement regarding the subject matter of this proceeding shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained herein.

Both parties to this Agreement have participated in its drafting and, consequently, any ambiguity shall not be construed for or against either party.

Each of the undersigned attorneys represents that he or she has been duly authorized to enter into this Agreement.

This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by both the Defendants' and the Plaintiffs' counsel and approved by the Court.

This Agreement shall inure to the benefit of and be binding upon the legal representatives and any successor of Plaintiffs and Defendants.

This Agreement may be executed in counterparts, each of which will be deemed to be an

original and all of which taken together shall constitute a single instrument. This Agreement may be executed by signature via facsimile transmission or electronic mail which shall be deemed the same as an original signature.

Nothing in this Agreement shall affect the rights of Class Representatives or Class members with respect to any claims that arise after the termination of the Agreement.

## XXV. NOTICE TO CLASS COUNSEL

Notice, when due to Plaintiffs' or Defendants' respective counsel, shall be given by delivering it, in person or by United States certified first class mail, and via electronic mail, to the parties' counsel of record in this litigation. Address for notification of counsel set forth in Section XXI:

For Defendant Department of Health Care Services, State of California:

> Susan M. Carson
> ATTORNEY GENERAL'S OFFICE
> 455 Golden Gate Avenue, Suite 11000
> San Francisco, CA 94102-7004
> Attorneys for Defendants
> Susan.carson@doj.ca.gov

For Plaintiffs:

> Elissa Gershon
> DISABILITY RIGHTS CALIFORNIA
> 1330 Broadway, Suite 500
> Oakland, CA 94612
> Attorneys for Plaintiffs
> Elissa.gershon@disabilityrightsca.org

## XXVI. SIGNATURES

For Defendants Approved as to Form:

> KAMALA D. HARRIS
> Attorney General of California
> SUSAN M. CARSON
> Supervising Deputy Attorney General
> JOSHUA N. SONDHEIMER
> Deputy Attorney General

Dated: December 1, 2011   By: _____

Susan M. Carson
ATTORNEY GENERAL'S OFFICE
Attorneys for Defendants

For Defendants:

Dated: _____   By: _____

Toby Douglas
Director, Department of Health Care Services

For Plaintiffs Approved as to Form:

DISABILITY RIGHTS CALIFORNIA
MORRISON & FOERSTER LLP
NATIONAL SENIOR CITIZENS LAW CENTER
NATIONAL HEALTH LAW PROGRAM
AARP FOUNDATION LITIGATION

Dated: _____   By: _____

Elissa Gershon
DISABILITY RIGHTS CALIFORNIA

Attorneys for Plaintiffs
Esther Darling, et al.

For Plaintiffs / Class Representatives:

Dated: _____   By: _____

ESTHER DARLING

Dated: _____   By: _____

RONALD BELL by his *guardian ad litem* Rozene
Dilworth

Dated: _____   By: _____

GILDA GARCIA

Dated: _____   By: _____

WENDY HELFRICH by her *guardian ad litem*
Dennis Arnett

44

Dated: _____     By:  _____
                                    Susan M. Carson
                                    ATTORNEY GENERAL'S OFFICE
                                    Attorneys for Defendants

For Defendants:

Dated: 12/1/11                 By:  _____
                                    Toby Douglas
                                    Director, Department of Health Care Services

For Plaintiffs Approved as to Form:

                                    DISABILITY RIGHTS CALIFORNIA
                                    MORRISON & FOERSTER LLP
                                    NATIONAL SENIOR CITIZENS LAW CENTER
                                    NATIONAL HEALTH LAW PROGRAM
                                    AARP FOUNDATION LITIGATION

Dated: _____     By:  _____
                                    Elissa Gershon
                                    DISABILITY RIGHTS CALIFORNIA

                                    Attorneys for Plaintiffs
                                    Esther Darling, et al.

For Plaintiffs / Class Representatives:

Dated: _____     By:  _____
                                    ESTHER DARLING

Dated: _____     By:  _____
                                    RONALD BELL by his *guardian ad litem* Rozene
                                    Dilworth

Dated: _____     By:  _____
                                    GILDA GARCIA

Dated: _____     By:  _____
                                    WENDY HELFRICH by her *guardian ad litem*
                                    Dennis Arnett

44

Dated: _____   By: _____
                                Susan M. Carson
                                ATTORNEY GENERAL'S OFFICE
                                Attorneys for Defendants

For Defendants:

Dated: _____   By: _____
                                Toby Douglas
                                Director, Department of Health Care Services

For Plaintiffs Approved as to Form:

                                DISABILITY RIGHTS CALIFORNIA
                                MORRISON & FOERSTER LLP
                                NATIONAL SENIOR CITIZENS LAW CENTER
                                NATIONAL HEALTH LAW PROGRAM
                                AARP FOUNDATION LITIGATION

Dated: 12-1-11             By: _____
                                Elissa Gershon
                                DISABILITY RIGHTS CALIFORNIA

                                Attorneys for Plaintiffs
                                Esther Darling, et al.

For Plaintiffs / Class Representatives:

Dated: 12-1-11             By: X  Esther Darling
                                ESTHER DARLING

Dated: _____   By: _____
                                RONALD BELL by his *guardian ad litem* Rozene
                                Dilworth

                           By: _____
                                GILDA GARCIA

                           By: _____
                                WENDY HELFRICH by her *guardian ad litem*
                                Dennis Arnett

44

Dated: _____    By: _____
                                      Susan M. Carson
                                      ATTORNEY GENERAL'S OFFICE
                                      Attorneys for Defendants

For Defendants:

Dated: _____    By: _____
                                        Toby Douglas
                                      Director, Department of Health Care Services

For Plaintiffs Approved as to Form:

                                      DISABILITY RIGHTS CALIFORNIA
                                      MORRISON & FOERSTER LLP
                                      NATIONAL SENIOR CITIZENS LAW CENTER
                                      NATIONAL HEALTH LAW PROGRAM
                                      AARP FOUNDATION LITIGATION

Dated: _____    By: _____
                                        Elissa Gershon
                                        DISABILITY RIGHTS CALIFORNIA

                                      Attorneys for Plaintiffs
                                      Esther Darling, et al.

For Plaintiffs / Class Representatives:

Dated: _____    By: _____
                                        ESTHER DARLING

Dated: _____    By: _Rozene Dilworth 12/1/11_____
                                        RONALD BELL by his *guardian ad litem* Rozene
                                        Dilworth

Dated: _____    By: _____
                                        GILDA GARCIA

Dated: _____    By: _____
                                        WENDY HELFRICH by her *guardian ad litem* Dennis Arnett

44

Dated: _____     By:     _____
                                     Susan M. Carson
                                     ATTORNEY GENERAL'S OFFICE
                                     Attorneys for Defendants

For Defendants:

Dated:                         By:    _____
                                     Toby Douglas
                                     Director, Department of Health Care Services

For Plaintiffs Approved as to Form:

                                     DISABILITY RIGHTS CALIFORNIA
                                     MORRISON & FOERSTER LLP
                                     NATIONAL SENIOR CITIZENS LAW CENTER
                                     NATIONAL HEALTH LAW PROGRAM
                                     AARP FOUNDATION LITIGATION


Dated: _____     By:     _____
                                     Elissa Gershon
                                     DISABILITY RIGHTS CALIFORNIA

                                     Attorneys for Plaintiffs
                                     Esther Darling, et al.

For Plaintiffs / Class Representatives:

Dated: _____     By:     _____
                                     ESTHER DARLING


Dated: _____     By:     _____
                                     RONALD BELL by his *guardian ad litem* Rozene
                                     Dilworth

Dated: _____     By:     *Gilda Garcia*  11/30/11
                                     GILDA GARCIA


Dated: _____     By:     _____
                                     WENDY HELFRICH by her *guardian ad litem*
                                     Dennis Arnett

44

Dated: _____   By: _____
                                 Susan M. Carson
                                 ATTORNEY GENERAL'S OFFICE
                                 Attorneys for Defendants

For Defendants:

Dated: _____   By: _____
                                 Toby Douglas
                                 Director, Department of Health Care Services

For Plaintiffs Approved as to Form:

                                 DISABILITY RIGHTS CALIFORNIA
                                 MORRISON & FOERSTER LLP
                                 NATIONAL SENIOR CITIZENS LAW CENTER
                                 NATIONAL HEALTH LAW PROGRAM
                                 AARP FOUNDATION LITIGATION

Dated: _____   By: _____
                                 Elissa Gershon
                                 DISABILITY RIGHTS CALIFORNIA

                                 Attorneys for Plaintiffs
                                 Esther Darling, et al.

For Plaintiffs / Class Representatives:

Dated: _____   By: _____
                                 ESTHER DARLING

Dated: _____   By: _____
                                 RONALD BELL by his *guardian ad litem* Rozene
                                 Dilworth

Dated: _____   By: _____
                                 GILDA GARCIA

Dated: 11/30/11            By: _____
                                 WENDY HELFRICH by her *guardian ad litem*
                                 Dennis Arnett

44

Dated: November 30, 2011     By: _____
                                 JESSIE JONES

Dated: _____        By: _____
                                   RAIF NASYROV by his *guardian ad litem* Sofiya
                                   Nasyrova

Dated: _____        By: _____
                                   ALLIE JO WOODARD, by her *guardian ad litem*
                                   Linda Gaspard-Berry

Dated: _____      By: _____

JESSIE JONES

Dated: __11/30/2011__         By: _____

RAIF NASYROV by his *guardian ad litem* Sofiya
Nasyrova

Dated: _____      By: _____

ALLIE JO WOODARD, by her *guardian ad litem*
Linda Gaspard-Berry

45

Dated: _____     By: _____
                                  JESSIE JONES

Dated: _____     By: _____
                                  RAIF NASYROV by his *guardian ad litem* Sofiya
                                  Nasyrova

Dated: 12/1/11               By: *Linda Gaspard - Berry*
                                  ALLIE JO WOODARD, by her *guardian ad litem*
                                  Linda Gaspard-Berry

45

# *Darling v. Douglas* C09-03798 SBA

## EXHIBIT 2

## NOTICE TO CLASS

to [Proposed] Order Granting Preliminary Approval of
Settlement Agreement, Directing Notice to the Class,
Setting a Scheduling Order and Fairness Hearing

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

**If you are in Medi-Cal and receive (or recently received) Adult Day Health Care (ADHC), this is a Notice of a Class Action Settlement Which May Affect You.**

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

A lawsuit was filed asking the Court to stop California from ending the Medi-Cal ADHC program unless other services were in place for people receiving ADHC services.  The parties to the lawsuit have reached a settlement of the lawsuit.  If the settlement is approved by the Court, the ADHC program will end on February 29, 2012.  Beginning March 1, 2012, you will receive other services depending on your situation. A full description of services which will be available and who will qualify for which services is set forth below.  Also listed below is information about the Settlement Agreement that should answer the questions you have about it and a place to contact if you have more questions.

This Settlement will not affect your ability to continue to see your primary care provider if you are currently in Medicare.  The services that are available under the settlement agreement will be in addition to the services you currently receive through Medicare.

This case is not one for money damages.

The Court still has to decide whether to approve the Settlement Agreement.

**This Notice explains your rights and your options – and the deadlines to act on them.  READ THIS NOTICE CAREFULLY.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | If you do nothing, the court will evaluate the Settlement without your comments.   You will give up the right to challenge the end of the ADHC program in another lawsuit. If you receive ADHC services now, you do not have to respond to this Notice to get the services created by this Settlement. |
| **OBJECT IN WRITING BY JANUARY 10, 2012** | Write to the Court about why you don't like the Settlement.  In addition, you may ask to speak in Court about your objections.  Your objection must be sent to the Court by January 10, 2012 to be considered. |
| **GO TO THE FAIRNESS HEARING ON JANUARY 24, 2012.** | If you want to speak at the Fairness Hearing, make sure to say that in your letter to the Court.   However, you do not have to appear at the Fairness Hearing for your objection to be considered. |

## NOTICE OF CLASS ACTION SETTLEMENT AGREEMENT
### *Darling et al. v. Douglas et al.*, C09-03798 SBA

### 1.    Why am I getting this Notice?

You are getting this notice because you are now receiving or, at some point since July 1, 2011, have received Medi-Cal Adult Day Health Care (AHDC) services and are considered a Class Member in this lawsuit.

You have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement. This Notice explains the lawsuit, what Class Members will get if the Court approves the Settlement, and your legal rights regarding the Settlement.

The Court in charge of the case is the United States District Court for the Northern District of California.  The case is named *Darling et al. v Douglas et al.* The Case Number is C:09-03798 SBA.  The seven ADHC participants who sued are called named Plaintiffs, and the Defendants are the Department of Health Care Services (DHCS) and its Director Toby Douglas.  All other individuals who receive ADHC services are called Class Members.

### 2.    What is this lawsuit about?

In 2009, people receiving Medi-Cal Adult Day Health Care (ADHC) (the Plaintiffs) sued the Defendants.  They asked the Court to stop Defendants from reducing ADHC services, which it did.  In 2011, the Plaintiffs asked the Court to stop the Defendants from ending the ADHC benefit. They argued that, unless Defendants provided services to replace ADHC, ending the program would violate the Americans with Disabilities Act (ADA) and other laws.  The State Defendants deny these arguments.

### 3.    Why is this a class action?

In a class action, one or more people, called Class Representatives or named plaintiffs, sue on behalf of people who have similar claims. All of these people are Class Members. One court resolves the issues for all Class Members. In this case, Esther Darling and the other named Plaintiffs sued on behalf of everyone receiving the Medi-Cal ADHC benefit.  Any decision by the Court in this case will affect all Class Members.

### 4.    Why is there a settlement?

The Plaintiffs and Defendants have agreed to a settlement in which they have worked together to design new programs to replace the ADHC program. The Class Representatives and the Plaintiffs' attorneys think the Settlement is fair. **A Fairness Hearing to approve the final settlement will be held in the U.S.**

2

**NOTICE OF CLASS ACTION SETTLEMENT AGREEMENT**
*Darling et al. v. Douglas et al.*, C09-03798 SBA

**District Court in Oakland on January 24, 2012 at 1:00 p.m.   See questions 14-17 below for more information about the Court hearing.**

### 5.    How do I know if I am part of the settlement?

You are a class member and are part of the Settlement if you fit this description:

> "All Medi-Cal beneficiaries in the State of California for whom Adult Day Health Care benefits will be eliminated under the provisions of AB 97 including those who met or will meet the current eligibility and medical necessity criteria for ADHC at any point prior to the Effective Date of this Settlement; or who will meet the eligibility and medical necessity criteria for CBAS at any point prior to Termination of this Agreement."

This means you are covered by the Settlement if you would have had your Medi-Cal ADHC benefit eliminated by Assembly Bill 97 (AB 97) or you will qualify for ADHC before March 1, 2012. It also means that people who qualify for the new program, Community Based Adult Services (CBAS), will be covered by the Settlement.  "AB 97" (Assembly Bill 97) is a new law that eliminated ADHC as a Medi-Cal benefit.

### 6.    What does the Settlement provide?

Under the Settlement Agreement, DHCS will set up a new Medi-Cal program called Community Based Adult Services ("CBAS").

- CBAS allows eligible people in Medi-Cal to get skilled nursing care, social services, therapies, personal care, family/caregiver training and support, meals, transportation, and case management in one central location.

- CBAS will be available at some former ADHC centers that are approved by DHCS as CBAS providers.

- CBAS will start on March 1, 2012.

The Settlement will set up "Enhanced Case Management" for those who were in ADHC, but who do not qualify for CBAS.

- Enhanced Case Management will help eligible people get the medical and social services they need once ADHC ends. You will have a say in what services they get and how they get them.

ADHC services will continue until February 29, 2012 to give people time to change from getting their services from ADHC providers to getting their services

3

## NOTICE OF CLASS ACTION SETTLEMENT AGREEMENT
### *Darling et al. v. Douglas et al.*, C09-03798 SBA

from CBAS providers or to begin receiving Enhanced Case Management. All class members will receive either CBAS or Enhanced Case Management.

This is not a case for money damages, so no Plaintiffs or Class Members will receive payment for being part of the lawsuit.

### 7.    What happens to me under the Settlement?

- If you have Medi-Cal and <u>are</u> in ADHC now:

  o You will be assessed for CBAS sometime between December 2011 and February 2012. Your ADHC provider will give you more information about the assessment process.

  o If you qualify for CBAS, you will receive these services as soon as ADHC services end, March 1, 2012.

  o If you do not qualify for CBAS, February 29, 2012 will be your last day of ADHC services. You will get Enhanced Case Management services to help you transition to other services that you need.

- If you have Medi-Cal but <u>are not</u> in ADHC now:

  o You may still apply for ADHC until February 29, 2012.

  o You may ask to be assessed for CBAS.

### 8.    How do I know if I qualify for CBAS?

You can receive CBAS if you are in Medi-Cal <u>AND</u> currently qualify for ADHC, <u>AND</u>:

- Need enough nursing to meet "Nursing Facility Level of Care A" (NF-A) or above; <u>OR</u>

- Have a moderate to severe cognitive impairment, including moderate to severe Alzheimer's Disease or other dementia; <u>OR</u>

- Have a developmental disability; <u>OR</u>

- Have a mild to moderate cognitive disability, including Alzheimer's or dementia AND need assistance or supervision with two of the following: bathing, dressing, self-feeding, toileting, ambulation, transferring, medication management, or hygiene; <u>OR</u>

- Have a chronic mental illness or a brain injury AND need assistance or supervision with two of the following: bathing, dressing, self-feeding,

4

## NOTICE OF CLASS ACTION SETTLEMENT AGREEMENT
### *Darling et al. v. Douglas et al.*, C09-03798 SBA

toileting, ambulation, transferring, medication management, and hygiene; OR one need from the above list and one of the following: money management, accessing resources, meal preparation, and transportation.

**9.   If I am assessed and I qualify, do I automatically get CBAS?**

Yes.  Once you are found eligible for CBAS, you will get instructions on how to enroll if there is a CBAS center where you live.  If there is no CBAS center where you live, you will be able to get the services that are offered at CBAS centers, but from other providers.

- Between March 1, 2012 and approximately July 1, 2012, CBAS will be available through regular Medi-Cal.  Eventually, CBAS will mostly be available through Medi-Cal managed care.

- Once CBAS is mostly available only through Medi-Cal managed care, if you live in a county that offers Medi-Cal managed care, and you qualify to enroll in a managed care plan, you may ONLY get CBAS through managed care.

    o If you enroll in Medi-Cal managed care any time before July 1, 2012, or if you are already enrolled in Medi-Cal managed care, your managed care plan will pay for CBAS when it becomes a managed care option.  You will not need to make any changes to continue to get CBAS.

    o If you could be enrolled in Medi-Cal managed care but are not now, you will have to enroll to continue to get CBAS when it becomes available through Medi-Cal managed care.

    o If you get Medicare, enrollment into Medi-Cal managed care **WILL NOT** affect your ability to choose your Medicare doctors.

- If you live in a county that does not have Medi-Cal managed care or you cannot get managed care, you do not need to make any changes to continue to get CBAS. You may continue to receive CBAS as a regular Medi-Cal benefit.

**10.   Will I Be Able to Go to the Same Center to Get CBAS?**

It depends.  Many ADHC centers will be able to offer CBAS. ADHC centers can apply to the state to become CBAS providers.  If you qualify for CBAS and your ADHC center is approved to be a CBAS provider by February 29, 2012, you will be able to keep receiving services at the same center once ADHC ends.  If your

## NOTICE OF CLASS ACTION SETTLEMENT AGREEMENT
### *Darling et al. v. Douglas et al.*, C09-03798 SBA

ADHC center does not become a CBAS provider, you will be given information about other CBAS providers.

### 11.    What if I don't qualify for CBAS?

If you are in ADHC, but don't qualify for CBAS, you will get "Enhanced Case Management" to help you get the medical and social services you need after ADHC ends. Case managers in this program will work with you so that you have a say as to what services you get and how you get them.

You will have the choice to receive Enhanced Case Management as a regular Medi-Cal service or through Medi-Cal managed care.

### 12.    Do I have a lawyer in the case?

Yes.  Disability Rights California, the National Senior Citizens Law Center, the National Health Law Program, AARP Foundation Litigation, and the law firm of Morrison & Foerster LLP were approved by the Court to represent you and other Class Members. Together, the lawyers are called Class Counsel. You will not be charged for these lawyers.

### 13.    How will the lawyers be paid?

If the Settlement is approved, the Defendants will pay attorneys' fees to plaintiffs' attorneys for their work on this case.  The Court must approve the amount of fees. Plaintiffs and Defendants will ask the court to approve fees of $2.2 million for the work done over the last 2-1/2 years.  They will also ask the Court to approve up to $400,000 for Plaintiffs' lawyers to monitor the settlement over the next 2-1/2 years.   You do not need to pay the attorneys.

### 14.    What are my options about the Settlement?

You may do nothing, and you will remain a Class Member.  You may write a letter to the Court stating the reasons why you do not like the Settlement, and mail it by January 10, 2012.  If you want to speak at the Fairness Hearing on January 24, 2012, you MUST say that in your letter.  It is up to the Court whether you will be permitted to speak at the hearing.  However, you do not have to appear in Court on January 24, 2012 in order for your objection to be considered.

### 15.    If the Settlement is approved, what does that mean?

If this Settlement is approved, you will be able to get either CBAS or Enhanced Case Management depending on your situation. You will not be able to be part of another lawsuit about whether California can end the Medi-Cal ADHC benefit.

**NOTICE OF CLASS ACTION SETTLEMENT AGREEMENT**
***Darling et al. v. Douglas et al.*, C09-03798 SBA**

### 16.   How do I tell the court if I don't like the Settlement?

If you're a Class Member, you can tell the Court that you do not agree with the Settlement or with any part of it by sending a letter with your objections by January 10, 2012. You may write the letter yourself or through an attorney at your own expense.

To object, you must send a letter to the Court saying that you object and explain the reasons for your objection.  At the top of the letter, be sure to include your name, address, telephone number, and write "Darling v. Douglas, C 09-3798 SBA."  Be sure to sign your letter.

  Mail the original letter to the Clerk of the Court and copies of the letter to the attorneys for the parties. The objection must be mailed to these three different places postmarked no later than **January 10, 2012:**

| Clerk of the Court: U.S. District Court 1301 Clay Street Oakland, CA 94612  Reference:  *Darling et al. v. Douglas et al.,* Case No. C09-07398 SBA | Attorneys for Class Members: Elissa Gershon Disability Rights California. 1330 Broadway, Suite 500, Oakland, CA 94612  ATTN: *Darling v. Douglas* | Attorneys for DHCS: Susan M. Carson Office of the Attorney General 455 Golden Gate Avenue, Suite 11000 San Francisco, CA 94102-7004 |

### 17.   When and where will the Court decide whether to approve the Settlement?

The Court will hold a "Fairness Hearing" to decide whether to approve the settlement on **January 24, 2012 at 1:00 p.m.**   The Court will consider whether the settlement is fair, reasonable, and adequate.  The Judge will listen to Class Members who have asked to speak at the hearing.  You may attend even if you do not wish to speak.   The hearing will take place at:

United States District Court
Northern District of California
1301 Clay Street
Courtroom 1, 4th Floor
Oakland, CA 94612

**NOTICE OF CLASS ACTION SETTLEMENT AGREEMENT**
*Darling et al. v. Douglas et al.*, **C09-03798 SBA**

### 18.    What happens if I do nothing at all?

If you do nothing, you will remain a class member. If this Settlement is approved, you will be able to get CBAS or Enhanced Case Management depending on your situation. You will not be able to be part of another lawsuit about whether California can end the Medi-Cal ADHC benefit.

#### GETTING MORE INFORMATION

### 19.    How do I get more details about the Settlement?

To get more information, a copy of the Settlement Agreement, or help in making an objection to the Court, you may contact Disability Rights California:

| darling@disabilityrightsca.org | (888) 599-3921 |
|---|---|

### 20.    How do I get more information about the case?

You can get more information about the case by looking at the case file located in the office of the Clerk of the U.S. District Court located at the address listed in question 17.  You can also look at the full settlement and get other information at:

- http://www.disabilityrightsca.org/advocacy/Darling-v-Douglas/index.html OR
- http://www.dhcs.ca.gov/services/medi-cal/Pages/ADHC/ADHC.aspx

### 21.    How do I get copies of this notice in other languages or in formats that accommodate people with disabilities?

If you need a copy of this notice in another language, have a disability and need an accommodation such as an alternate format for notice (for example, Braille, or large print), or an alternate way to ask questions about the notice (for example, a sign language interpreter), you can:

- Contact Plaintiffs' attorney Disability Rights California at (888) 599-3921; OR

- Visit the Disability Right California or DHCS websites listed in Question 20.